**Enrique Flores LOPEZ, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 13-82-406-CR.**

Court of Appeals of Texas, Corpus Christi.

Dec. 29, 1983.

**910**

Abel Toscano, Jr., Harlingen, for appellant.

Reynaldo Cantu, Jr., Dist. Atty., Brownsville, for appellee.

Before BISSETT, KENNEDY and GONZALEZ, JJ.

OPINION

BISSETT, Justice.

Appellant was convicted of burglary and sentenced by a Cameron County jury to pay a fine of seven thousand five hundred dollars ($7,500.00) and to be confined in the Texas Department of Corrections for a period of fifty years. We reverse.

In his first ground of error, appellant argues that the trial court committed material error in refusing to grant appellant's motion for dismissal of the indictment based on the State's violation of the Texas Speedy Trial Act, TEX.CODE CRIM.PROC. ANN. art. 32A.02 (Vernon Supp.1982–83), and also TEX. CONST. art. I, § 10, and U.S. CONST. amend. VI.

It is necessary to discuss the particular facts of this case in order to come to a resolution of the first ground of error. Appellant was arrested on February 8, 1982. Appellant was indicted on April 14, 1982, for committing burglary on or about February 8, 1982. On May 24, 1982, the prosecutor for the State announced ready to proceed against appellant and co-defendant Isaac Pedraza. Appellant was not present, but had already been sent to the Department of Corrections on another conviction. The prosecutor testified that on May 27, 1982, he received a memorandum from the trial judge in whose court this case was docketed. That memorandum inquired of the prosecutor as to whether a motion to dismiss should have been filed in this case since appellant had pled guilty to aggravated robbery on February 8, 1982, and the docket entry indicated that a second aggravated robbery charge had been dismissed and that this dismissal was taken into account in assessing punishment.

It can be seen that the date of appellant's plea of guilty in the aggravated robbery case was the same date as his arrest in this case. The prosecutor testified that he investigated the matter, and then on May 27, 1982, personally told the judge that this

case was still pending and asked the judge to issue a bench warrant to bring appellant back for trial. The prosecutor did not then further pursue the matter, apparently assuming that the bench warrant would be issued in time. The prosecutor also received a copy of a form letter from the Texas Department of Corrections dated May 10, 1982, requesting information on any pending charges against the appellant on approximately June 8, 1982. The prosecutor indicated on the form letter that he wanted to bring the appellant back for trial. On June 16, 1982, the trial court issued a bench warrant to return appellant to Cameron County to stand trial in this cause. Appellant filed a motion to set aside the indictment for failure to comply with the Speedy Trial Act on August 5, 1982. On August 10, 1982, appellant was arraigned for trial. The trial date was set by the Court for November 29, 1982.

 The facts show that the prosecutor had initially satisfied the provisions of TEX.CODE CRIM.PROC.ANN. art. 32A.02 (Vernon Supp.1982–83), since he was ready for trial within the 120-day period. However, appellant's absence rebutted the prima facie showing of readiness made by the State for the purpose of showing compliance with the Speedy Trial Act. *Newton v. State*, 641 S.W.2d 530 (Tex.Cr.App.1982). The narrow questions before us are whether the 120-day time period had elapsed, and if so, were the prosecutor's efforts to obtain the presence of the defendant an exercise of due diligence. TEX.CODE CRIM.PROC. ANN. art. 32A.02, § 4 (Vernon Supp.1982–83) provides that various periods of time shall be excluded from the running of the 120-day period. The State refers us to four of these periods, but we shall discuss only those covered by subsections 4(1), 4(5), and 4(10). The pertinent parts of the statute read as follows:

"Sec. 4. In computing the time by which the state must be ready for trial, the following periods shall be excluded:

(1) a reasonable period of delay resulting from other proceedings involving the defendant, including but not limited to proceedings for the determination of competence to stand trial, hearing on pretrial motions, appeals, and trials of other charges;

\* \* \* \* \* \*

(5) a period of delay resulting from the unavailability of the defendant whose location is known to the state but whose presence cannot be obtained by due diligence or because he resists being returned to the state for trial;

\* \* \* \* \* \*

(10) any other reasonable period of delay that is justified by exceptional circumstances."

 A general discussion of the case law is necessarily in order. The 120-day time period begins when the defendant is either arrested or formally accused. TEX. CODE CRIM.PROC.ANN. art. 32A.02, § 2(a) (Vernon Supp.1982–83). This section provides as follows:

"Sec. 2(a) Except as provided in Subsections (b) and (c) of this section, a criminal action commences for purposes of this article when an indictment, information, or complaint against the defendant is filed in court, unless prior to the filing the defendant is either detained in custody or released on bail or personal bond to answer for the same offense or any other offense arising out of the same transaction, in which event the criminal action commences when he is arrested."

We must first decide whether the time period in this case began with appellant's arrest. *Garcia v. State*, 625 S.W.2d 431 (Tex. App.—Houston [14th Dist.] 1981, d.r. ref'd), is instructive, although its facts are somewhat different from those in this case. In *Garcia*, the appellant was already in prison when he stabbed a fellow inmate and was placed in solitary confinement. Appellant argued that the 120-day period should run from the day he was placed in solitary confinement, since this was tantamount to an arrest. The Court disagreed, finding that this was an administrative action, not an arrest. In this case, the appellant was arrested and on the same day was sen-

tenced to prison on an unrelated charge. The question then is whether the time between the date of arrest and the date of indictment was attributable to this charge, since he was being detained on another conviction. We hold that it was, because unlike in *Garcia,* the arrest here was prior to the detention resulting from the other charge and conviction. Appellant here was detained in custody prior to the filing of the indictment against him in this case, so the tolling period began at that point, and so his detention on another conviction was merely concurrent with his detention on this charge.

We now turn to the question of whether any of the exclusionary provisions under the Speedy Trial Act should apply since appellant's confinement was due to another charge. As we have previously indicated, appellant was confined after his arrest on this charge, so his detention is concurrent. This is not the same situation as in *Parish v. State,* 632 S.W.2d 200 (Tex. App.—Fort Worth 1982, no d.r.), where the period the appellant spent in jail awaiting trial on other pending charges was not included in the 120-day period. There were no other pending proceedings which would have caused a delay in returning appellant. Therefore, subsection (1) does not apply.

Subsection (5) addresses a period of delay resulting from the unavailability of a defendant whose presence is known to the State but whose presence cannot be obtained by the State using due diligence. In *Lyles v. State,* 653 S.W.2d 775 (Tex.Cr.App. 1983), the Court of Criminal Appeals held the prosecution had the burden of securing the presence of the defendant. In that case, the prosecution was held responsible for the sheriff's inexplicable rejection of a bail bond posted by the defendant because the situation was one which was resolved easily once the prosecutor began to exercise due diligence. The Court reiterated that the Speedy Trial Act refers to the prosecutor and does not encompass the trial court and its docket. The focus here is therefore on whom the delay is attributable to. This was not a circumstance that was entirely

out of the control of the prosecutor. The prosecutor could easily have checked on the progress of the trial court's issuance of the bench warrant and expedited the matter before the 120-day period elapsed. This would have required no major effort on his part. We hold that the prosecutor here failed to use due diligence in securing the appellant's presence, so subsection (5) does not apply.

We finally must address the issue of whether the circumstances of this case were "exceptional" within the meaning of subsection 4(10). Prior decisions do not support the conclusion that they were. In *Hamilton v. State,* 621 S.W.2d 407 (Tex.Cr. App.1981), the defendant was held in jail under an assumed name that he had never previously used. This was held to be an "exceptional circumstance." In *Karpeal v. State,* 628 S.W.2d 520 (Tex.App.—Fort Worth 1982, d.r. ref'd), the fact that all of the necessary witnesses were military servicemen who were out of state or out of country was held to be an "exceptional circumstance" within the meaning of the Speedy Trial Act. A judicial vacancy was held to be an "exceptional circumstance" in *Ostoja v. State,* 631 S.W.2d 165 (Tex.Cr. App.1982). The Court in *Ostoja* also indicated by way of dictum that the illness of a permanent trial judge could be an "exceptional circumstance." It would appear that an "exceptional circumstance" is one which is the result of delay in the judicial process as a whole. *See Ostoja,* at 167; and *Reed v. State,* 629 S.W.2d 105 (Tex.App.—Dallas 1981, d.r. ref'd), or one which places an unreasonably difficult burden on the prosecution, as in *Karpeal.* The negligence of the prosecutor is not considered an "exceptional circumstance." *See Reed,* at 106. We therefore hold that the circumstances of this case, although unusual, do not fall within the meaning of "exceptional circumstances" as envisaged in the Speedy Trial Act, so no time periods prior to the date the appellant was returned from the Texas Department of Corrections for his arraignment will be excluded. To sum up matters, appellant was not present on May

24, 1982, when the State announced ready. The burden then shifted to the State to produce the appellant before the 120-day deadline. The prosecutor orally requested a bench warrant on May 27, 1982. The bench warrant was not issued until June 16, 1982. It was eight days past the 120-day deadline. The prosecutor had had eleven days before the deadline to secure the issuance of the bench warrant. The State asks in its brief what more it could have done to secure the presence of the appellant. The answer is clear. The prosecutor could have checked back with the judge to inquire about the warrant being issued and the appellant returned before the fast approaching deadline elapsed. If the judge had refused to issue the warrant, this would be another case. The purpose of the Speedy Trial Act is to make sure that the wheels of justice are kept turning. The burden is placed upon the prosecution to do as much as it has power to do to meet the 120-day deadline. The State has failed to do that in this case. Appellant's first ground of error is sustained. We, therefore, need not discuss appellant's constitutional contentions or decide the remaining grounds of error.

The judgment of the trial court is REVERSED, and the prosecution is ordered DISMISSED.