Orren W. GROGAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–85–00825–CR.

Court of Appeals of Texas,
Dallas.

May 30, 1986.

Rehearing Denied June 26, 1986.

George R. Milner, Dallas, for appellant.

Anne B. Wetherholt, Dallas, for appellee.

Before VANCE, DEVANY and SCALES, JJ.

VANCE, Justice.

Orren W. Grogan appeals his conviction for indecency with a child, for which the jury assessed punishment at confinement for life. Appellant presents five grounds of error. In grounds of error one and two, appellant contends that the trial court erred in denying his motion to dismiss the indictment for violation of the Speedy Trial Act and erred in admitting into evidence the testimony of the State's witness, Dana Goodwin. In grounds of error three and four, appellant asserts that the evidence is insufficient to support the finding of true to the second paragraph of the indictment because the trial court erred in admitting into evidence the Kansas penitentiary packets. In ground of error five, appellant objects to the admission of the Oklahoma penitentiary packet. For the reasons stated below, we disagree with each contention and, accordingly, affirm the judgment of the trial court.

When complainant was seven years old, she was living with her mother and appellant, her mother's boyfriend. At trial, complainant testified that on November 12, 1982, after making her look at dirty books, appellant made complainant pull down her pants. Then, he put his middle finger into her vagina. When she protested that it hurt because she felt his fingernail scratching her, complainant's mother, who was in the room, responded by saying, "It couldn't hurt, that bad; you're just faking it."

Complainant further testified that before this event, appellant made her watch him and her mother engage in sexual intercourse, made her touch his penis, made her lie still while he ejaculated on her stomach, and made her suck his penis.

Around Thanksgiving, 1982, complainant went to visit her natural father, stepmother, and stepsisters. During this visit she told one of the stepsisters that appellant had inserted his finger into her. She also told the stepsister of other instances of sexual abuse. When the complainant's father and stepmother were informed, they notified the authorities.

Because complainant's mother participated in the sexual abuse, complainant was removed from her mother's custody and placed with her father. The appellant was arrested on November 27, 1982. On November 29, the State announced "ready." On December 20, an indictment charging appellant with the offense of indecency with a child, a second degree felony, was filed. The State was ready to try appellant on the day his indictment was returned.

However, before a trial date was set, the trial court granted complainant's mother overnight visitation with complainant for Christmas day. Instead of returning complainant to the father, as ordered by the court, the mother took her to Missouri where she enrolled her in school under

another name. After numerous unsuccessful efforts were made to locate the complainant, the State had the indictment dismissed on February 16, 1983. The State could not try the case without its "key witness" and dismissed the indictment to stop the running of time under the Speedy Trial Act.

After the complainant was taken to Missouri, appellant lived with her and her mother. At trial, complainant testified that in Missouri appellant continued sexually abusing her including inserting his penis into her vagina on numerous occasions. This testimony of repeated sexual intercourse was verified by the medical testimony of Dr. Paul Prescott. More than a year later, complainant was located, and appellant was reindicted March 29, 1984, for the same offense. The State filed its announcement of "ready" on April 16, 1984.

In his first ground of error, appellant contends that he is entitled to acquittal because the State failed to try his case within the 120–day limit of the Speedy Trial Act. TEX.CODE CRIM.PROC.ANN. art. 32A.02 § 1(1) (Vernon Supp. 1986).[1] We disagree.

In the present case, the 120–day period commenced when appellant was arrested on November 27, 1982. From this day until the filing of the indictment on December 20, 1982, twenty-three days are charged to the State. At the speedy-trial hearing, the State's attorney testified that he was ready to try the case on the day the indictment was returned on December 20. Consequently, the statute was tolled on December 20 because the State's readiness on December 20 was a prima facie showing of compliance with the act, and appellant did not rebut this presumption. *Samora v. State*, 642 S.W.2d 817, 819 (Tex.App.—Tyler 1982, pet. ref'd).

When complainant (the State's key witness) disappeared on December 25, 1982, the State could not proceed to trial. However, the period from complainant's disappearance to the dismissal of the first indictment is excluded under section 4(10). Section 4(10) provides:

In computing the time by which the State must be ready for trial, the following periods shall be excluded:

\*       \*       \*       \*       \*       \*

(10) any other reasonable period of delay that is justified by the exceptional circumstances.

█ Because the Speedy Trial Act was enacted to address prosecutorial delays, time periods are excluded under section 4(10) for exceptional circumstances that place an unreasonably difficult burden on prosecution. *Lopez v. State*, 663 S.W.2d 908, 912 (Tex.App.—Corpus Christi 1983, pet. granted). In *Karpeal v. State*, 628 S.W.2d 520, 523 (Tex.App.—Fort Worth 1982, pet. ref'd), the court excluded under section 4(10) the time delays in securing the appearance of out-of-state witnesses who were necessary to the prosecution. In *Canada v. State*, 660 S.W.2d 528, 529–30 (Tex.Crim.App.1983), the court excluded under section 4(10) the time a material witness was unavailable for trial due to the hospitalization of the witness. In both *Karpeal* and *Canada*, the circumstances concerning the unavailability of the material witnesses were less extraordinary than the present case.

In the instant case, the abduction of the State's key witness by the unlawful conduct of her mother is not chargeable to a "prosecutorial delay." On the contrary, the prosecuting attorney made every effort to oppose the mother's motion for the overnight visitation. At trial, the complainant's father testified that at the court hearing on the mother's motion for overnight visitation, the motion was "vehemently contested by myself, by the Texas Department of Human Resources, and *by the Juvenile Division of the District Attorney's Office.*" (emphasis added).

---

1. All references are to the Speedy Trial Act, TEX.CODE CRIM.PROC.ANN. art. 32A.02 (Vernon Supp.1986), unless otherwise noted.

In addition, the State's attorney testified at the speedy-trial hearing of the diligent efforts made to locate the complainant. The trial court issued writs of attachment for complainant and her mother. Child Welfare and the sheriff's office tried to locate complainant. The State's attorney contacted Constable Don Freeman who went to her last known address and to the school she had attended. Finally, an investigator was assigned to the case who worked on the case until the F.B.I. found complainant in Missouri. In summary, the State is not accountable for the delays attributable to the decision of the court which granted overnight visitation and to the unlawful conduct of the mother. We, therefore, exclude the time from the date complainant disappeared to the dismissal of the indictment. We also exclude, under section 4(7), the time period after the indictment was dismissed because the State dismissed the charge against appellant.

■ Appellant was reindicted on March 29, 1984. At the speedy-trial hearing the State's attorney testified that he was ready to try appellant on the day the second indictment was filed, although the formal announcement of ready was not filed until April 16. Consequently, because the State's readiness on March 29 and its formal filing or announcement of ready on April 16 was a prima facie showing of compliance with the act. *Samora v. State*, 642 S.W.2d at 819. After the State's announcement of ready, the burden shifted to appellant to present sufficient evidence to rebut the State's assertion of readiness for trial. *Lopez v. State*, 628 S.W.2d 82, 84 (Tex.Crim.App.1982). The appellant did not challenge the State's readiness until filing a motion to dismiss the following September. However, at that hearing, there was no evidence presented to rebut the State's readiness by proving that appellant was not available for trial on March 29.

Appellant argues in his brief that the record at the hearing shows he was not arrested until May 16. He cites as proof of his arrest the following dialogue during the speedy trial hearing:

MR. MILNER [appellant's counsel]: The Defendant was originally arrested on this charge on November 27, 1982. What do your records show for the next arrest of the Defendant on this charge:

MR. CHAPMAN [State's attorney]: I don't know when he was arrested again.

MR. MILNER: Your file does not permit you to tell us that?

MR. CHAPMAN: Well, it's not here and I have no knowledge, myself, when he was arrested on ...

THE COURT: May 16, 1984, or he was put in the Dallas County Jail on that date, anyway.

Neither the appellant's counsel nor State's attorney offered into evidence any records of arrest or incarceration; however, the judge stated that May 16 was the date of arrest or the date of incarceration. We conclude, therefore, that appellant was incarcerated on May 16, 1984.

Even if May 16, 1984, is the date of arrest, that fact alone is insufficient to show that appellant was unavailable for trial prior to May 16. The appellant did not testify that his location was unknown or that he was absent from Dallas County or unavailable for trial prior to May 16. There is no evidence in the record showing that appellant was unavailable for trial prior to May 16, 1984. It is the appellant's burden to bring forth records and evidence to rebut the State's announcement of ready, and he failed to do so.

In summary, we compute the running of time under the Speedy Trial Act as follows: Twenty-three days are charged to the State from the date of appellant's first arrest until the first indictment was filed, when the State announced ready for trial. The time period from the abduction of the complainant until the dismissal of the indictment is excluded under section 4(10). Because the State was ready to prosecute on the day the second indictment was filed the State again made a prima facie showing of compliance with the Speedy Trial Act which was not rebutted by appellant. Conse-

quently, even if appellant had not been available for trial until May 16, 1984, his case was prosecuted well within the 120–day period. We overrule this ground of error.

■ In ground of error two, appellant contends that the trial court erred in admitting into evidence the testimony of complainant's stepsister. Appellant contends that article 38.07 of the Code of Criminal Procedure, as amended in 1983, eliminated the requirement that a victim, younger than fourteen years, inform another person of the offense within six months. Appellant reasons that since the "outcry" testimony was not necessary to prove the State's case at trial, the testimony of complainant's sister was inadmissible hearsay which denied appellant's rights to confrontation and due process. We disagree.

Article 38.07 as it existed at the time of the offense contained the outcry requirement. It stated:

A conviction under Chapter 21, Penal Code is supportable on the uncorroborated testimony of the victim of the sexual offense if the victim informed any person, other than the defendant, of the alleged offense within six months after the date on which the offense is alleged to have occurred.

TEX.CODE CRIM.PROC.ANN. art. 38.07 (Vernon 1981). The 1983 amendment, however, eliminated the outcry requirement in article 38.07 if the victim is younger than fourteen years.

The effective date of the 1983 amendment was September 1, 1983. However, section 2 provides that the 1983 amendment applies only to a "prosecution commenced on or after the effective date." Act of Sept. 1, 1983, ch. 382, § 2, 1983 Tex.Gen.Laws 2090, 2091. Section 13 applies the 1983 amendment to offenses committed on or after the effective date of the statute. Act of Sept. 1, 1983, ch. 977, § 13, 1983 Tex.Gen.Laws, 5311, 5321. (Both section 2 and 13 are now found in the footnotes in TEX.CODE CRIM.PROC.ANN. art. 38.07 (Vernon Supp. 1986)).

The gist of appellant's argument is that the 1983 amendment controls because, under section 2, the prosecution for cause number F84–93232–UQ, commenced on March 29, 1984, when the second indictment was filed which was after the effective date of the act. Appellant maintains that since the 1983 amendment controls, there was no outcry requirement and the testimony of the stepsister was inadmissible hearsay meriting reversal of the case. We disagree with each argument.

Both sections 2 and 13 are essential requirements for the applicability of the statute. We conclude that section 13 was added to cover those cases where the offense was committed prior to the effective date of article 38.07 and the prosecution was commenced after the effective date. By adding section 13, the legislature avoided the possibility of a prosecution being conducted under a law that did not exist when the offense was committed. Consequently, we hold that both the offense and the prosecution must occur on or after the effective date of the act for it to apply.

■ In the instant case the offense occurred on October 20, 1980, prior to the effective date of the 1983 amendment to article 38.07. In addition, for the purpose of section 2, we hold that the prosecution against appellant also commenced when he was first arrested, prior to the effective date. In appellant's brief, he argues that, for the purpose of the Speedy Trial Act, the prosecution commenced under the first indictment since "the indictment in cause number F84–93232–UQ was simply a reindictment of the previous indictment and charged the same offense." We agree with appellant on this point and, hold that for the purpose of article 38.07, the prosecution commenced under the first indictment before the 1983 amendment was in effect. We conclude therefore that the former version of article 38.07, not the 1983 amendment, controls this case.

■ Alternatively, appellant argues that even if former article 38.07 applies, the outcry testimony was inadmissible because it went beyond the statutory require-

ment, i.e., the stepsister's testimony recited the details of the offense, not just that the victim had told her of the offense. Outcry testimony, however, may be admitted only as evidence that the victim informed someone of the offense, not for the truth of the matter asserted. *Heckathorne v. State,* 697 S.W.2d 8, 11–13 (Tex.App.—Houston [14th Dist.] 1985, no pet.). *Id.* at 12. If the defendant had requested a limiting instruction that the jury consider the outcry testimony only for the purpose that a statement was made, and not for its truth, the trial judge would have been obliged to grant it. *Id.* In the instant case, appellant did not request a limiting instruction. Therefore, any error is waived.

■ Appellant next contends that even if former article 38.07 applies, the outcry testimony was inadmissible because Dr. Paul Prescott's medical testimony corroborated the victim's testimony, and article 38.07 authorizes outcry testimony only when the victim's testimony is not corroborated. Article 38.07 is inapplicable only where an eyewitness to the sexual offense corroborates the young victim's testimony. *Id.* "The lack of any other eyewitness" is the meaning of "uncorroborated testimony" in article 38.07. *Id.*

In the instant case, the mother and appellant, the only possible eyewitnesses, denied any participation in the sexual abuse of complainant. Dr. Prescott testified that complainant had experienced repeated sexual intercourse. Dr. Prescott's testimony is neither eyewitness testimony nor a corroboration of the particular incident alleged in the indictment. Consequently, complainant's testimony was not corroborated for the purpose of article 38.07.

■ Furthermore, even in the absence of article 38.07, the outcry testimony was not hearsay because it was a prior consistent statement made by a witness who was subject to cross-examination and whose prior statements rebutted a charge of motive or recent fabrication. *See Duncantell v. State,* 563 S.W.2d 252, 255 (Tex.Crim.App. 1978), *cert. denied,* 439 U.S. 1032, 99 S.Ct. 637, 58 L.Ed.2d 695 (prior consistent state-

ments admitted to rehabitate a witness where an attempt was made to impeach the witness with his prior inconsistent statements); *Ray v. State,* 649 S.W.2d 142, 145 (Tex.App.—Fort Worth 1983, pet. ref'd) (prior consistent statements are inadmissible *unless* they bolstered the testimony of an impeached witness); *Jones v. State,* 649 S.W.2d 665, 667 (Tex.App.—Waco 1983, no pet.) (prior consistent statements admitted to rebut an accusation of fabrication). In the instant case, when complainant was cross-examined, she testified that she disliked appellant and preferred living with her natural father rather than her mother and appellant. From this testimony, the jury could conclude that complainant had a motive to fabricate the offense. We hold that the stepsister's testimony relating complainant's prior consistent statements was admissible to rehabilitate complainant's testimony. In conclusion, we hold that the stepsister's testimony was admissible under article 38.07 and also admissible to rehabilitate complainant's testimony. We overrule this ground of error.

In grounds of error three and four, appellant contends that the evidence is insufficient to support the jury's finding of true to the second paragraph of the indictment because the trial court erred in admitting into evidence the Kansas penitentiary packets. In ground of error five, appellant argues that the Oklahoma pen packet, which was not admitted for the purpose of enhancement, but only for impeachment, was improperly admitted because the certification was defective. Appellant argues that the certifications of the Kansas and Oklahoma pen packets were defective because they did not specifically mention the case numbers or the sentences of the convictions.

At trial, the Oklahoma and Kansas packets were admitted after the State's attorney informed the court that the certification page and the documents of each pen packet were stapled together. In addition, Neiman Allen of the Identification Section of the Dallas County Sheriff's office testified that he took a set of fingerprints from

appellant and that the fingerprints in the penitentiary packets were made by appellant.

The certification page of each pen packet stated that the photographs, fingerprints, and commitment(s) attached to the certificate were true and correct copies of appellant's original records. Since the commitments were certified, the judgments and sentences necessarily were also certified. *Todd v. State,* 598 S.W.2d 286, 291–92 (Tex.Crim.App.1980); *White v. State,* 681 S.W.2d 731, 734 (Tex.App.— Houston [14th Dist.] 1984, no pet.). Furthermore, a series of documents stapled together as one unit and containing only one certification page complies with the Official Records Act, article 3731a, and were admissible. *Alvarez v. State,* 536 S.W.2d 357, 361 (Tex.Crim.App.1976); TEX. REV.CIV.STAT.ANN. art. 3731a (Vernon Supp. 1986). Thus, we overrule appellant's third, fourth, and fifth grounds of error.

Affirmed.