**Perry Joe SHELBY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. B14–85–842–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 1, 1990.

Discretionary Review Granted Feb. 6, 1991.

Janet Seymour Morrow, Houston, for appellant.

Linda A. West, Jay T. Karahan, Houston, for appellee.

Before PAUL PRESSLER, CANNON and ELLIS, JJ.

## OPINION ON REMAND

PAUL PRESSLER, Justice.

In October 1985, upon a plea of not guilty, appellant was convicted by a jury of aggravated sexual assault. TEX.PENAL CODE ANN. § 22.021. The trial court assessed punishment at thirty-five years' imprisonment enhanced by a 1981 conviction for burglary of a building. The conviction was affirmed by this court in an unpublished opinion. *Shelby v. State*, No. B14–85–842–CR, 1987 WL 8788, April 2, 1987. In May 1988, the Court of Criminal Appeals granted discretionary review on the first point of error only and then dismissed it as having been improvidently granted in February 1989. On rehearing, however, the Court of Criminal Appeals reversed the decision of this court and remanded the case.

The Court of Criminal Appeals found that appellant properly preserved its trial error and that the trial court improperly limited the scope of his cross-examination of the complainant's mother. The case was remanded to this court with instructions to perform a harmless error analysis under TEX.R.APP.P. 81(b)(2). *Shelby v. State*, No. 491–87 (Tex.Crim.App., delivered January 24, 1990) (not published).

In *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986), the U.S. Supreme Court applied a harmless error analysis to the erroneous deprivation of a defendant's Sixth Amendment right of confrontation where the trial court had unconstitutionally restricted the defendant's cross-examination of a State's witness. The U.S. Supreme Court first set forth the test for harmless error in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The *Chapman* court stated that "before a federal constitutional error can be harmless, the court must be able to *declare a belief* that it was harmless beyond a reasonable doubt." 386 U.S. at 24, 87 S.Ct. at 828. This harmless error test, with some exceptions not applicable to this case, is functionally codified in TEX.R. APP.P. 81(b)(2). *See Harris v. State*, 790 S.W.2d 568, 584 (Tex.Crim.App.1989) and *Bennett v. State*, 766 S.W.2d 227, 229 n. 7 (Tex.Crim.App.1989).

Rule 81(b)(2) provides as follows:

*Criminal cases.* If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

*Id.*

The Court of Criminal Appeals outlined a three-step progression set forth in Rule 81(b)(2) in *Mallory v. State*, 752 S.W.2d 566, 569–570 (Tex.Crim.App.1988). First the appellate court must find from the record that an error exists. Second, if an error is discovered, the appellate court is then obligated to reverse the judgment. Third, only if "the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction" can the appellate court affirm. *Id.*

Here the requisite error exists since the Court of Criminal Appeals has already held that the trial court improperly limited the scope of appellant's cross-examination of

the complainant's mother. *Shelby v. State*, 491–87 (Tex.Crim.App., delivered January 24, 1990) (not published). Therefore, this court must reverse the judgment unless the failure to permit cross-examination of the complainant's mother made no contribution to the conviction. Tex.R.App.P. 81(b)(2).

■ The Court of Criminal Appeals held that the appellate court should first isolate the error and all its effects. In so doing it should focus on the tainted evidence and determine whether it contributed to the conviction. It should then determine whether a rational trier of fact might have reached a different result if the error and its effects had not resulted. 790 S.W.2d at 588. In isolating the error, the appellant should calculate the probable impact of the error on the jury in light of the other evidence. The predominant concern must be the tainted evidence. 790 S.W.2d at 587. The U.S. Supreme Court outlined seven factors to be considered whether a rational trier of fact might have reached a different result:

(1) The importance of the tainted evidence in the prosecution's case;

(2) Whether such evidence was cumulative;

(3) The presence or absence of corroborative or contradictory evidence;

(4) Whether a limiting or curative instruction was or could have been given;

(5) The presence of absence of prosecutorial comments upon such evidence;

(6) Whether the accused had prior encounters with the law; and

(7) The overall strength of prosecution's case.

*Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986).

■ Here the testimony which would have been elicited upon cross-examination allegedly would have been that of a civil suit against appellant and the apartment complex where the offense took place. Appellant contends that such testimony would have demonstrated the mother's bias against the accused. The complainant's mother's testimony was allowed both as an "outcry" witness and under the excited utterance exception to the hearsay rule. See Tex.R.Crim.E. 803(2). An "outcry" witness may testify as to a victim's complaint of a sexual attack when the "outcry" was made within six months of the sexual attack and the State seeks conviction on uncorroborated testimony of the victim. Tex.Code Crim.Proc.Ann. art. 38.07; *Brown v. State*, 649 S.W.2d 160, 162 (Tex.App.—Austin 1983, no pet.). "Uncorroborated testimony" means absence of any eye-witness other than the victim. *Heckathorne v. State*, 697 S.W.2d 8, 12 (Tex.App.—Houston [14th District] 1985, *pet. ref'd*). According to case law, the outcry testimony of the complainant's mother could be admitted only as evidence that her child informed someone of the sexual offense, not for the truth of the matter asserted. *Grogan v. State*, 713 S.W.2d 705, 710 (Tex.App.—Dallas 1986, no pet.). However, the record reveals no request by defense counsel that the jury be instructed to consider the outcry testimony of the complainant's mother only for its limited purpose. Thus, appellant's trial counsel failed to insulate appellant from the potentially harmful effect of the mother's outcry testimony. Now appellant claims that this testimony was harmful.

■ Appellant's trial counsel actually argued vigorously against classifying the complainant's mother as an outcry witness. While attempting to persuade the trial judge, appellant's trial counsel stated,

"... [complainant's mother's] testimony is only *repetitious* of what other witnesses might testify to and again she is not the proper outcry witness, there having been *other witnesses who were told* prior to her hearing." (*italics ours*).

Trial Record Vol. II–25.

The first witness actually to hear the outcry was the child's aunt, who was babysitting for him at the time of the sexual offense. She was the only true "outcry" witness whose testimony was excepted from a hearsay objection since she was the first person 18 years or older to whom the child made a statement that described the

sexual offense. TEX.CODE CRIM.PROC.ANN. art. 38.072. However, on appeal appellant does not contest the trial court's designation of complainant's mother as an outcry witness. The aunt's testimony is virtually a repetition of the direct testimony of the complainant's mother.

The testimony of the complainant's mother was further corroborated by an investigating police officer. Virtually all of the pertinent facts attested to by the complainant's mother on the direct examination were included in the testimony of other prosecution witnesses. Appellant does not contend that the other witnesses were biased.

The only unique testimony elicited from the complainant's mother was by appellant's trial counsel during cross-examination. Cross-examination revealed the discovery of blood on the child's underwear, the diagnosis by two doctors that the child's anus had been penetrated, and the fact that appellant lived in an apartment across the street from her and her child. Now appellant complains that he was harmed by this cross-examination testimony because of the trial court's error, even though it was appellant's trial counsel who elicited it.

The testimony most harmful to the appellant was a videotaped testimony by the victim himself and his live testimony during cross-examination. Using anatomically correct "boy" and "man" dolls, the videotape interview demonstrates every detail of the offense. The videotape explains how the man lured the child, used a key to gain entry to a vacant apartment, bound the child's hands with a rope, pulled down the child's pants, touched the child's penis with his hand, removed his own pants, masturbated, and stuck his finger in the child's anus. On cross-examination, the child reiterated the most salient points in his videotaped testimony. The record also shows that the victim identified the appellant in court as the man who touched him. The videotaped interview, together with the child's courtroom testimony, present a strong case of aggravated sexual assault of a child.

 The prosecutor did comment on the tainted evidence during closing arguments. However, in light of the existence of other evidence, the effect of these comments was de minimus. A limiting instruction could have been given, but appellant's trial counsel failed to request it. The case hinged on the believability of the child, not on the credibility of the complainant's mother.

Beyond a reasonable doubt, the trial court's error made no contribution to the appellant's conviction. The erroneous limitation of the cross-examination was harmless. The judgment of the trial court is affirmed.