**Kenneth Wayne SMITH, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 09–86–063 CR.**

Court of Appeals of Texas,
Beaumont.

June 24, 1987.

Miguel Martinez, The Woodlands, Keith Valiqura, Bruce W. Cobb, Conroe, for appellant.

Peter Speers, III, Dist. Atty., Conroe, for appellee.

## OPINION

BROOKSHIRE, Justice.

Appellant was indicted for robbery. The indictment alleged that the Appellant threatened and placed the Complainant *in fear of imminent bodily injury and death by causing her to believe that he had a firearm.* In a jury trial, the Appellant was

found guilty and assessed punishment at 60 years confinement.

The thrust of the Appellant's first point of error is simply that the evidence is insufficient to support the conviction because the State failed to prove that the Complainant was in fear of imminent bodily injury and death, which fear was caused by the Complainant's belief that the Appellant had a firearm.

The Appellant vigorously argues that the Complainant repeatedly stated, on direct examination, that she did not believe that the Appellant had a gun and that she did not feel threatened by a gun.

On the date of the alleged offense, the Complainant was employed as a clerk at a liquor store. At about noon, the Appellant arrived in a car. Appellant went into the store and told the Complainant that he (Appellant) was drunk. His appearance confirmed this to the clerk. Appellant's eyes were bloodshot and his speech was slurred. Appellant went out to his car to put in his purchases but came back to get some ice and some cups. Appellant then approached the area of the cash register and tried to explain why he was intoxicated. His speech was so blurred and slurred that Complainant said she could not understand it. She tried to ignore him.

The Appellant wanted to borrow some money from the cash register. The Complainant refused. The Appellant then asked if he could borrow some money from the Complainant. Again, the Complainant refused. Then, the tone of Appellant's voice became very demanding and Appellant seemed to sober up extremely quickly. Appellant told Complainant to open the cash register, which she did. Appellant said that he had a gun but the Complainant testified that she did not believe he had a gun and she did not think that he could have had a gun, where he was pointing to in his clothing, but she did not want to take any chances. Although the Complainant did not think that the Appellant had a gun, she testified that she was scared so she opened the cash register. Then, the Appellant put his hand into the register and took some $20 bills, some $10 bills and some $5

bills. The bills totalled $180. Appellant put the money in his pocket and, before he left, Appellant told the Complainant not to say anything or do anything or he would blow her brains out. He then walked out of the store towards the car.

In the record, we find this from the complainant:

"A   Can I stand up?

"Q   Sure.

"A   He told me that he had a gun right here in the front of his pants, down in front of his pants (indicating).

"Q   Could you see to determine whether or not he actually did have a gun?

"A   I did not believe from what I could see that he did have a gun where he was pointing to, where he said he had one.

"Q   But could he have had one?

"A   He could have, but from what I could see, you know, he didn't have one.

"Q   Were you absolutely positive that he didn't have a gun?

"A   I was basically pretty sure that he did not have one, not with him, you know.

. . . .

"Q   When he was telling you this and telling you to open the register and that he had a gun and that he would blow your brains out, why did you let him do it if you didn't think he had a gun?

"A   Well, I was just scared. His voice was so demanding sounding and I was just scared. I just did exactly what he told me to do, you know.

. . . .

"Q   (By Ms. Klapperich) Did you feel threatened when he told you to do this?

"A   (By Witness) Yes, but not by a gun or anything. I didn't want to fight with him over the money and—"

. . . .

"Q   (By Ms. Klapperich) Did you feel threatened at that time?

"A   (By Witness) Yes. I was scared. I was more scared than I think I was

442

being threatened, you know, with my life anyways.

"Q Did you think he could harm you at that time?

"A No, but I didn't want to take my chances. I didn't want to fight over the money, you know, and get myself hurt. I didn't want to fight and play games with him over the money so I just did exactly what he told me to do.

"Q And you are really not sure whether he would have hurt you or not at that point?

"A No.

"Q And you are not sure whether or not he had a gun?

"A No."

■ We necessarily conclude that the State failed to prove the allegation in the indictment that the Appellant placed the Complainant in fear of imminent bodily injury and death by causing her to believe he had a firearm. We reluctantly conclude that it is settled law that when the *means used to commit this assaultive offense* are alleged in the indictment, being descriptive of an essential element of the offense, then that allegation has to be proved by the State. *Burrell v. State*, 526 S.W.2d 799 (Tex.Crim.App.1975); *Holloway v. State*, 168 Tex.Crim.R. 264, 324 S.W.2d 886 (1959). As an intermediate court, we are required to yield to this "settled law." This settled law is unsound, especially in this case. We strongly urge the Court of Criminal Appeals to reconsider this technical rule, same being devoid of justice in this case; in fact, it defeats justice herein.

■ In summary, if a certain variance exists between the indictment's allegations and the evidence, it can render the evidence insufficient to sustain the conviction. *Franklin v. State*, 659 S.W.2d 831 (Tex. Crim.App.1983). Unnecessary allegations in the charging instrument or indictment may be considered as mere surplusage if they are not descriptive or characteristic of what is legally essential to the validity and correctness of an indictment. *Windham v. State*, 638 S.W.2d 486 (Tex.Crim.App.1982). When the unnecessary words are descrip-

tive of that which is legally essential then these words or allegations necessarily must be proved as alleged although the same need not have been alleged. *Weaver v. State*, 551 S.W.2d 419 (Tex.Crim.App.1977). Again, we urge that this technical rule should be reformed.

■ We conclude that it was *legally essential for the indictment to allege:*

"... threaten and place Pam Solly in fear of imminent bodily injury and death...."

And we decide that the additional words:

"... by causing Pam Solly to believe that said defendant had a firearm...."

are descriptive of that which is legally essential. *Burrell v. State, supra.* The State failed to prove this additional allegation. In fact, the Complainant, Solly, we decide, disproved it against the State.

The State was bound to prove this additional allegation, under the present state of the law. Hence, the sentence and judgment will be reversed.

But must an acquittal be ordered? Under the present status of the decisional law of our state, we perceive the answer is "yes". For this proposition, Appellant cites *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) and *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978). *Burks* and *Greene, supra,* are ultimately based on the double jeopardy clause of the Fifth Amendment. We think that there are different categories of insufficiency of the evidence. A careful reading of *Burks* reveals that the United States had not fulfilled its burden of proving the sanity of the accused beyond a reasonable doubt. That burden of proving sanity was truly an essential element of the offense. *Burks* was not dealing with a descriptive allegation describing the means used to commit the offense. The descriptive allegation need not have been alleged. But the State elected to do so.

We decide the better reasoning on the standard for reviewing the lack of sufficient evidence is set out in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979), as follows:

"Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Johnson v. Louisiana,* 406 US, [356] at 362, 32 L.Ed.2d 152, 92 S.Ct. 1620 [1624–1625]...." (Emphasis theirs)

The writer would seriously maintain a mere descriptive allegation is not an essential element of the crime. Nevertheless, this matter must be first addressed by the Court of Criminal Appeals. See the concurring opinion of Chief Justice Nye in *Casares v. State,* 703 S.W.2d 246, 249–250 (Tex.App.—Corpus Christi, 1985, pet ref'd). We quote some of the more compelling parts from the *Casares* opinion:

"I propose that the entire case law in this area needs to be re-examined ... The current status of the case law actually tends to defeat the important purpose that an indictment must fully apprise an accused of the offense he is charged with. Prosecutors currently have a disincentive to allege anything but the bare bones of an offense in an indictment for fear that some *minute matter* (i.e., used his shoulder) may not be proved at trial and the accused may then be set free on what the people of Texas call 'a technicality.'

....

"The amendment and the statute reflect a wide-spread discontent with a judicial system which allows offenders to be acquitted on mere 'technicalities.' Of course, the courts do not bow and acquiesce to public opinion. However, the will of the people of this State is certainly an important factor to consider when judges are engaged in making or reshaping the common law." (Emphasis theirs)

A miscarriage of justice has occurred in this case, especially in view of this record which clearly shows that the Appellant repeatedly threatened the complainant, telling her that he had a firearm. There could have been no surprise to this Appellant nor injustice to this Appellant in an affirmance of his conviction under this unique record.

It is disheartening and depressing to be required to order an acquittal in this case. Common sense justice has been thwarted; once again the criminal justice system in Texas has become unbalanced and tilted unreasonably in favor of the wrongdoer.

RELUCTANTLY, REVERSED AND REMANDED, with instructions.

BURGESS, Justice, concurring.

I concur in the result but not in my colleagues' remarks concerning the criminal justice system in Texas. This case is not one of mere technicalities. It may be one of an overworked, underpaid assistant district attorney, or it may be the result of a myriad of circumstances. The bottom line, however, is the state should have known what evidence was presented to the grand jury and should have drafted the indictment to reflect that evidence. I agree that the specific result of this case may be distasteful, but, I would not characterize a system which requires that an accused be given notice of the charges and then requires that the state prove those charges as being unbalanced and tilted unreasonably in favor of the wrongdoer.