**Shelby Vinton DAVIS, III, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–88–039–CR.**

Court of Appeals of Texas, Waco.

June 15, 1989.

John W. Segrest, Waco, for appellant.

Paul E. Gartner, Jr., Criminal Dist. Atty., Tanya Boyce Dohoney, Asst. Dist. Atty., Waco, for appellee.

## OPINION

MEANS, Justice.

Shelby Vinton Davis, III, brings this appeal from his conviction for the crime of attempted burglary. The jury, after enhancement, assessed his punishment at fifteen years in the Texas Department of Corrections ("T.D.C.") and a $3,000.00 fine.

The record made at Davis's trial reveals that he, along with three young boys between the ages of eleven and fifteen, was arrested about 3:00 a.m. on a Sunday morning in May 1988, near a Waco shopping center. He was first found coming from behind a building in that center where back entrances and a service road were located. His dress was casual; he wore no socks, but a pair were in his jacket pocket. A small pocket knife was also found on him. One of the boys, who had been hiding from the arresting officer, was wearing an empty knife sheath and concealing two white, empty bags in his clothing. Three knives were found next to the building; the blade of one was bent and broken, giving it a flat end like a screwdriver. Appellant admitted that he owned this knife. There were fresh pry marks on a back door of the building leading to a dentist's office, beneath which there were clean paint chips on the ground. The screen on the door had been cut and partially pulled out of the wooden frame, which was lighter in color there than where it remained intact. The marks on the door were consistent with Appellant's knife.

After their arrest, the three boys were taken to a juvenile center. During processing, an officer asked the boys if they had any money with them, and one boy responded, "If we had any money do you think we would have been breaking into that building?" After processing, another small pocket knife was found in the back seat of the patrol car which took the boys from the scene of their arrest to the center.

## I.

Appellant's first three points of error on appeal concern sufficiency of the evidence. He contends the evidence at trial was insufficient to prove that: (1) he attempted a burglary by "cutting the screen at the back door," (2) the attempt was made with intent to commit theft, and (3) the damage to the screen door was inflicted by Appellant alone or as a party. The test of sufficiency is "whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Chambers v. State*, 711 S.W.2d 240, 245 (Tex.Crim.App.1986).

Viewed in the light most favorable to the prosecution, what did the jury have before it? First, a freshly-cut screen door. Second, a young adult, Appellant, with three boys under the age of 16 in the immediate vicinity of the screen door at 3:00 o'clock in the morning. Third, knives admittedly belonging to Appellant in his or the boys' possession—knives of sufficient size to cut the screen. Fourth, the concealed possession of bags by the boy who hid from the investigating officers. Fifth, socks—useful to cover hands and fingers committing theft—not on Appellant's feet to protect them from his street shoes, but in his pocket. Sixth, newly-chipped paint and wood from the door, which also exhibited fresh prize marks. Seventh, Appellant's broken-tipped knife, its blunted point consistent with the prize marks on the door. Eighth, a smudged and unreadable fingerprint on a knife otherwise completely clean of prints, consistent with use of a glove—or a sock—to cover or obliterate such prints. Ninth, the lack of *any* fingerprints around the door—a fact consistent with use of the socks as gloves during the prizing of the

door. We find that any rational trier of fact, including the jury in this case, could have found, beyond a reasonable doubt, that Appellant attempted a burglary by "cutting the screen on the back door" with the intent to commit theft.

We agree with Appellant that the State of Texas ("the State") was required to prove *he* cut the screen or that someone for whom he was criminally responsible did so. *See Smith v. State*, 732 S.W.2d 440, 442 (Tex.App.—Beaumont 1987, pet. ref'd); *Casares v. State*, 703 S.W.2d 246, 248 (Tex. App.—Corpus Christi 1985, pet. ref'd). We also agree that as to each element of the offense circumstantial evidence is not *sufficient* evidence unless the State excludes every reasonable hypothesis except the guilt of Appellant. *See Vanderbilt v. State*, 629 S.W.2d 709, 716 (Tex.Crim.App. 1981).

■ Appellant offered no evidence and therefore no hypothesis at trial. However, at the scene, he offered a hypothesis which the prosecution repeated in court: that he and the boys were innocent bystanders merely out looking for his lost wallet. In view of the evidence already reviewed, *supra*, we find that hypothesis unreasonable.[1] In a circumstantial evidence case the state need not present evidence excluding every conceivable hypothesis except that of guilt, but need only present evidence excluding every *reasonable* hypothesis. *Hooker v. State*, 621 S.W.2d 597, 601 (Tex.Crim.App. [Panel Op.] 1980).

■ In his brief, Appellant for the first time suggests that vandalism—not theft— could have been intended when the screen was cut. That hypothesis was successfully advanced by the defendant in *Perez v. State*, 695 S.W.2d 51, 54 (Tex.App.—Corpus Christi 1985, no pet.), which Appellant cites. There, the court reversed the defendant's conviction for burglary because the activity at which he was caught—attempting to pry out and remove an outside air conditioner unit—was ambiguous to a charge of attempted burglary: he could

have been stealing the air conditioner; he could have been engaged in vandalism. Here, unlike *Perez*, mere vandalism is excluded by the target of Appellant's destruction (the screen and entrance doors), by possession of the bags, by the handy availability of the socks, and by the lack of damage to more inviting vandalism targets like the windows. Every fact need not point directly and independently to the defendant's guilt in a circumstantial evidence case; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Vanderbilt*, 629 S.W.2d at 716.

Appellant insists that anyone—even his defense counsel—could have cut the screen, there being no testimony or physical evidence as to exactly who did so or when. In a vacuum, this "it-might-have-been-the-butler" hypothesis Appellant advances would be persuasive, if not compelling. Placed, however, in the context of all the facts adduced at trial, one cannot reasonably conclude that the butler, Appellant's counsel, or anyone but Appellant or one of the boys cut the screen. Appellant's hypothesis is excluded because it is not a reasonable one, consistent with the facts proved and the circumstances; his premise that the offense may have been committed by another person is out of harmony with the evidence. *See Vanderbilt*, 629 S.W.2d at 716.

Appellant also asserts that because this is, in his opinion, a weak circumstantial evidence case, the State's failure to call as a witness any of the juveniles who were arrested along with him requires this court to find that there was a "showing of reasonable doubt of the sufficiency of the evidence to support the conviction." Appellant cites *Waldon v. State*, 579 S.W.2d 499, 502 (Tex.Crim.App. [Panel Op.] 1979) for this assertion. However, *Waldon* and the standard of review it espouses were expressly overruled in *Chambers*, 711 S.W.2d at 245, where the court states: "Either the evidence permits a rational trier of

---

**1.** Besides the evidence reviewed previously, the State showed at trial that neither Appellant nor his nephews carried a flashlight into the dark alley in which they claimed to be looking for a wallet.

fact to find the essential elements of the offense beyond a reasonable doubt or it does not. What is not in evidence is irrelevant to a determination of the sufficiency of the evidence."

## II.

■ Appellant's points of error four and five fault the trial court's charge to the jury. Specifically, Appellant insists in his point four that giving *any* charge as to law of parties was error but if not, then it was error to give a charge worded abstractly; that is, a charge which did not apply the law to the facts (point five).

We overrule point four. The evidence reviewed above supports the State's contention that Appellant committed attempted burglary by the conduct of others for whom he was criminally responsible. Accordingly, the trial court properly gave the jury the following abstract charge setting out the law of parties found in V.T.C.A. Penal Code, §§ 7.01(a) and 7.02(a)(1):

> Each party to an offense may be charged with commission of the offense. A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible or by both. A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, aids, or attempts to aid the other person to commit the offense. Mere presence alone will not constitute one a party to a crime.

However, the court erred when it did not apply the law of parties to the facts. Where the evidence raises an issue as to whether the appellant is guilty under the law of parties, it is error for the trial judge to refuse the appellant's request that the charge explicitly apply that law to the facts of the case. *Johnson v. State*, 739 S.W.2d 299, 305 (Tex.Crim.App.1987). It is error because a defendant is entitled to have a jury adjudge him guilty only after being expressly informed of the facts it must find before doing so. An abstract charge does not do this. *See Williams v. State*, 547 S.W.2d 18, 20 (Tex.Crim.App.1977). Here, the jury was not informed that in order to find Appellant guilty as a party to the crime it would have to find that he solicited, encouraged, aided, or attempted to aid one or more of the three boys, by name, to attempt to enter the dentist's office by cutting the screen on the back door, etc.

■ Finding error in the court's charge to the jury begins—not ends—the inquiry; the next step is to make an evidentiary review and a review of any other part of the record which may illuminate the actual, not just the theoretical harm that error may cause the accused. *Almanza v. State*, 686 S.W.2d 157, 174 (Tex.Crim.App.1984). The necessity for review is made manifest by *Almanza*, at page 171:

> If the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is 'calculated to injure the rights of defendant,' which means no more than there must be *some* harm to the accused from the error.

The phrase, "calculated to injure the rights of defendant," is lifted from article 36.19, Texas Code of Criminal Procedure, which sets out the statutory standard for review of charge error on appeal. The Court of Criminal Appeals further defined that phrase and the "some harm" language of *Almanza* in *Arline v. State*, 721 S.W.2d 348 (Tex.Crim.App.1986) at page 351: "the presence of *any* harm, regardless of degree ... is sufficient to require a reversal of the conviction. Cases involving preserved charging error will be affirmed only if *no* harm has occurred."

Was there no harm here? What guideposts have we to answer that question? First, there is Judge Campbell's analysis in a footnote to *Black v. State*, 723 S.W.2d 674, 676 (Tex.Crim.App.1986): "[I]f the record indicated some basis for rejecting the evidence of the [defendant's] guilt as a [primary actor,] i.e., if the State argued that [Defendant] was guilty as a party or if there was conflicting evidence of [Defendant's] guilt as a [primary actor,]" then "some harm" could be predicated on the

trial court's failure to apply the law to the facts. Then there is *Johnson,* where the court held the error in refusing to apply the law of parties to the facts was harmful "because that was the theory of prosecution best supported by the evidence and most fervently advanced before the jury in the State's final argument." *Johnson,* 739 S.W.2d at 305.

In the case at hand the State produced some evidence of Appellant's guilt as a primary actor, it's true. But all of the evidence in this case was circumstantial. Did Appellant himself, with his own hand and knife cut the screen? The State, in recognition of that fact, requested a parties charge and argued twice in its closing that Appellant was guilty as a party:

> Take a look in regards to the page of parties (sic). This is a party page which states that a person is criminally responsible for an offense committed by the conduct of another if acting with intent to promote or assist the commission of the offense he solicits, encourages, aids, or attempts to aid the other person to commit the offense.

> If you think that Mr. Davis, from the facts, aided, solicited, or encouraged somebody to cut that screen, he is just as guilty as a person who cut the screen.

> \* \* \* \* \* \*

> Your Honor, there were children involved in this. And I urge the Court not to let Mr. Davis run and hide behind these children today. Even if the children did cut the screen, the parties charge indicates that even if they did, he certainly was out there helping them and showing them how to do it.

We are unable to say that no harm came to Appellant by the court's error in failing to apply the law of parties to the facts. Even if it may be said that Appellant's guilt as a party was not the theory of prosecution most fervently advanced by the State, it is clear from final argument that the prosecution was quite willing to accept a conviction on that basis. We believe the jury probably convicted Appellant by reasoning that even if he wasn't guilty as a primary actor—even if he didn't cut the

screen himself—he was guilty as a party. That being the case, it was harmful to refuse instructions as to what exact facts the jury had to find in order to adjudge Appellant guilty of a crime committed by others. Charged properly, the jury could have found itself unable to find evidence to support one or more of the necessary elements requisite to conviction.

*Johnson* is distinguishable from the case before us, says the State, because there the defendant's guilt as a party was the state's sole theory, whereas here the State sought Appellant's conviction either as the primary offender *or* as a party. If that is a distinction, it surely is one without a difference. *Johnson* requires an application of the law of parties to the facts when the evidence raises an issue of guilt under the law of parties regardless of the presence of evidence that the defendant could also have been found guilty as a principal. *Ruiz v. State,* 766 S.W.2d 324, 326 (Tex.App.— Houston [14th Dist.] 1989, no pet.). Only when the evidence *clearly supports* guilt as a primary actor is it harmless error to fail to apply the law of parties to the facts. *Govan v. State,* 682 S.W.2d 567, 571 (Tex.Crim. App.1985). The evidence in this case is far from clearly supporting Appellant's guilt as a primary actor.

We sustain Appellant's point of error five. Failure of the charge to apply the law to the facts in this case was calculated to injure the rights of Appellant to a trial by jury; it deprived him of a neutral and unbiased application of the law, leaving that function to the partisan advocacy of opposing counsel in argument. *See Williams v. State,* 547 S.W.2d at 18.

### III.

■ Waco policeman Ralph Nix, during routine post-arrest processing of Michael Gonzales and the other two boys found at the scene, asked if they had any money. Gonzales blurted, "If we had any money, do you think we would have been breaking into that building?" Appellant insists in his sixth point that the trial court committed harmful error by permitting Officer Nix to repeat Gonzales's statement to the

569

jury from the witness chair. We have concluded Appellant is correct.

The State persuaded the trial court that Gonzales's statement was admissible as a third-party declaration against interest under Texas Rule of Criminal Evidence 803(24). That rule reads in pertinent part as follows:

[Not excluded by the hearsay rule is a] statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability ... that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

Tex.R.Crim.Evid. 803(24). Gonzales's statement meets the requirements of Rule 803(24). It certainly was against his pecuniary interest and, but for the fact that he was a juvenile it tended to subject him to criminal liability. Further, corroborating circumstances clearly indicate the statement's trustworthiness: the cut screen, the chipped wood, the knives, etc.; Gonzales's very presence at the scene.

■ The hearsay hurdle is not, however, the only obstacle the boy's statement must clear. To be admissible against Appellant, it must satisfy the constitutional dictates of confrontation and cross-examination. The Sixth Amendment's Confrontation Clause provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend. VI. The Supreme Court has noted that, read literally, the Confrontation Clause would exclude *any* statement made by a declarant not present at trial. *Ohio v. Roberts*, 448 U.S. 56 at 63, 100 S.Ct. 2531 at 2537, 65 L.Ed.2d 597 (1980). But that was not what the Framers intended. Rather, the Confrontation Clause established first a rule of necessity: if the State cannot produce the declarant whose statement it wishes to use against the defendant, it must, as a prereq-

uisite to the statement's admissibility, demonstrate that the declarant is unavailable. *See id.* at 65, 100 S.Ct. at 2538.

Second, and after the declarant is proven unavailable, the Clause only permits hearsay which is trustworthy—hearsay which has certain "indicia of reliability." However, "[r]eliability can be inferred without more in a case where the evidence falls within a firmly-rooted hearsay exception." *Id.* at 66, 100 S.Ct. at 2539.

We infer the reliability of Gonzales's statement because it is evidence which falls within a firmly-rooted exception to the hearsay rule—the declaration against interest. Further, as demonstrated by the foregoing factual review, the statement has independent indicia of reliability.

That leaves the prerequisite of unavailability. Nothing in the record before us indicates whether or not Michael Gonzales was available to testify and be cross-examined or even whether the prosecution made a good-faith effort to secure his presence at trial. The State has the burden of showing that the hearsay declarant was unavailable or that a good-faith effort to produce him was made. *See Barber v. Page*, 390 U.S. 719 at 724, 88 S.Ct. 1318 at 1322, 20 L.Ed.2d 255 (1968). Not having made that showing, the statement of Michael Gonzales, however permissible under Rule 803(24), was constitutionally disqualified from being repeated by Officer Nix to the jury.

Applying the standard for harmful error established by Rule 81(b)(2) Tex.R.App.P., we cannot hold that this error, beyond a reasonable doubt, did not contribute to Appellant's conviction. This being a wholly circumstantial evidence case, it is likely that the jury gave some consideration to Officer Nix's inadmissible testimony. Point six is sustained.

## IV.

■ Appellant complains in his seventh and eighth points of error that the trial court erred in allowing into evidence two Texas Department of Corrections penitentiary packets ("pen packs") reflecting his prior convictions. They were offered by

the State to enhance Appellant's punishment. Appellant maintains that because the judgments and sentences contained in the pen packs were copies from the T.D.C.'s files instead of copies certified to by the clerk of the convicting court, they were not properly authenticated and were therefore not admissible.

Each judgment and sentence the trial court admitted into evidence was certified by the Record Clerk of the T.D.C. as "a full, true, and correct ... copy from its ... original." However, by the term "original," the record clerk apparently means whatever instrument is in his file at the T.D.C. No one suggests that the T.D.C. has on file anything more than a *copy* of the judgments and sentences of its inmates—a copy presumably certified to by the clerk of the convicting court. *See Blakes v. State*, 634 S.W.2d 319, 320 (Tex. Crim.App. [Panel Op.] 1982).

Here, the copy of the judgment and sentence provided by the T.D.C. and upon which enhancement was based was not certified by the clerk of the convicting court nor was a copy of that clerk's original certification (which presumably accompanied the judgment and sentence to the T.D.C.) attached. All we have, then, is a xerographic copy of the copy the T.D.C. received from the court clerk but without that court clerk's original or copied certification.

Is that enough? Rule 901(b)(7) of the Texas Rules of Criminal Evidence provides that "[e]vidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office ... is from the public office where items of this nature are kept" is sufficient to authenticate the writing. Copies of judgment and sentences are "authorized by law to be recorded or filed" at the T.D.C., and are "in fact recorded or filed in that public office." *Rodasti v. State*, 749 S.W.2d 161, 163 (Tex. App.—Houston [1st Dist.] 1988, no pet.). *See* Art. 42.09, § 8(a) V.A.C.C.P. Accordingly, authentication is complete once evidence is adduced that the proffered judgments and sentences are "from the public office where items of this nature are kept."

Evidence that the judgments and sentences were from the T.D.C.'s files could have taken the form of oral testimony from the record clerk himself. But Rule 902(4), Texas Rules of Criminal Evidence, provides a simpler and more practical method: self-authentication. Under Rule 902(4), extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to certified copies of public records. Here, the copies of the judgments and sentences offered and admitted were certified by the Record Clerk of the T.D.C. with sufficient formality to meet the requirements of Rule 902(4).

■ We conclude that the judgments and sentences were properly admitted. We are satisfied that both the letter and the spirit of Rules 901 and 902 were satisfied. That is not to say, however, that prosecutors should relax as to the quality of their enhancement proof. A copy of the judgment and sentence certified by the clerk of the convicting court is the most appropriate enhancement evidence. Failing that, the State ought to at least secure from the T.D.C., along with the copy of the judgment and sentence, a copy of the convicting court clerk's certification thereof. With those admonitions, Appellant's points seven and eight are overruled.

### V.

■ By his last point, Appellant alleges that the trial court erred when it overruled his objection to a statement the prosecutor made during final argument. The State's argument was based upon evidence that when Appellant was arrested there were socks in his pockets and upon testimony by Officer Nix that during burglaries, offenders often use socks instead of gloves to prevent leaving fingerprints. The challenged argument was: "Here's the socks, ladies and gentlemen. This is how they wear them so they won't leave any fingerprints. It is the indication that somebody, you know, has used these socks or done something like this before, you know." After Appellant objected to such argument on the ground that there was nothing in the evidence to show that he had committed

other offenses before, the State followed with:

So they won't leave any evidence, any fingerprints. Because Mr. Davis knew that when the police got there, if they got there, or when Dr. Davis—Dr. Smith—excuse me—came the next day, Monday, and he walked into his office expecting to do some business, walked in there, and he would see his office either ransacked or stuff missing out of his office, they knew fingerprints were going to be taken. So he put the socks on so when police got there, there won't be any fingerprints.

Appellant justifiably maintains that the prosecutor's statement exceeded the permissible scope of jury argument because it was not (1) a summation of the evidence, (2) a reasonable deduction from the evidence, (3) a response to argument of opposing counsel, or (4) a plea for law enforcement. *See Alejandro v. State*, 493 S.W.2d 230, 231 (Tex.Crim.App.1973). However, for reversible error to exist, "the jury argument must be extreme or manifestly improper, or inject new and harmful facts into evidence." *Shipley v. State*, 729 S.W.2d 349, 350 (Tex.App.—San Antonio 1987, no pet.).

While the statement made by the prosecutor in this case was inappropriate, we cannot hold that it was extreme or manifestly improper or that it injected new and harmful facts into evidence. On the contrary, we have determined, beyond a reasonable doubt, that the trial court's error, if any, in permitting such argument made no contribution to the conviction or the punishment.

Appellant directs our attention to *Melton v. State*, 713 S.W.2d 107 (Tex.Crim.App. 1986), in which the court held that the State's argument implying the defendant had committed other thefts required reversal. However, in *Melton*, the prosecutor implied that the defendant on trial had stolen over three hundred pieces of equipment. *Id.* at 114. In Appellant's case, the prosecutor implied that Appellant had used socks as gloves before. The prosecutor apparently was inviting the jury to infer that Appellant, being familiar with using socks as gloves, had participated in other criminal conduct in the past. Giving the jury this somewhat circuitous roadmap to consideration of extraneous offenses, while perhaps intended to work harm to Appellant, almost surely did not do so, especially when the prosecutor, by his remarks following the objection, clarified his argument. Point nine is overruled.

The conviction of Shelby Vinton Davis, III, is reversed. The cause is remanded to the trial court for a new trial.