Gerald Roger KING, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–87–00059–CR.

Court of Appeals of Texas, Tyler.

Dec. 15, 1989.

Rehearing Denied Jan. 18, 1990.

___

Hunter Brush, Tyler, for appellant.

Jack Skeen, Jr., Dist. Atty., Tyler, for appellee.

## OPINION ON REHEARING

J.W. SUMMERS, Chief Justice (Retired).

On original submission, appellant's conviction was reversed and remanded for a new trial as to punishment only. Upon consideration of appellant's motion for re-

hearing, we withdraw our original opinion delivered on October 31, 1989, and substitute the following.

Appellant Gerald Roger King (hereinafter "King") was convicted of aggravated assault on a peace officer with a deadly weapon by a jury who assessed punishment[1] at confinement for life. The trial court ordered the sentence to be cumulative of a sentence incurred by appellant in a prior federal conviction. We reverse and remand for a new trial as to punishment only.

The incident involving this offense occurred as an aftermath of an undercover drug transaction in which Kenneth Carner sold three-quarters of a pound of methamphetamines to undercover officers. King, Carner, and a third person involved in the drug transaction had been observed leaving a hotel room shortly before the drug delivery. One of the three was observed carrying a shotgun, and this information was transmitted to all law enforcement officers involved in the arrest. King and the third person got into a Thunderbird automobile which was later observed parked across the street from the place of the drug sale. Upon completion of the drug delivery, an electronic signal was given to alert the other officers assigned to the surveillance of the Thunderbird that Carner was under arrest, and for them to approach the Thunderbird and arrest its two occupants, one of whom was King. Tyler Police Officer Paul Black, the alleged victim of the aggravated assault, was a passenger in one of the two vehicles which then approached the Thunderbird automobile. Officer Black was wearing a hat and rain jacket displaying a police badge and the words "Tyler Police."

The testimony shows that as the officers approached the Thunderbird, Officer Black identified himself as a police officer; he shouted "Police, freeze, show me your hands," and "throw the gun out." Immediately thereafter, a shot was heard and a "flash" was observed coming from within the Thunderbird. Officer Black, believing that he had been fired upon, returned fire

[1]. Based upon a finding that the allegations contained in two enhancement paragraphs of the indictment were true. Tex. Penal Code Ann. § 12.42(d) (Vernon Supp.1989).

as he backed away from the Thunderbird. Another officer at the scene also opened fire upon the Thunderbird. During the brief period of shooting,[2] the appellant was observed moving the shotgun outside the car window, pointing its barrel in the direction of Officer Black. As soon as the appellant dropped the shotgun to the ground, all shooting ceased. Subsequently, it was learned that the shotgun was fired only once, striking appellant in his foot, and creating a hole in the front passenger floorboard.

▮ Appellant brings four points of error. We first address his fourth point of error in which he challenges the sufficiency of the evidence to support his conviction. King argues that the evidence presented supports a reasonable inference other than that he intentionally or knowingly threatened Officer Black with a deadly weapon, an essential element of the crime. Appellant King contends that he was only complying with Officer Black's order to throw the shotgun out the window and that, due to the shortness of time, any pointing of the weapon in Officer Black's direction would have been "of necessity, inadvertent, unintentional and unknowingly."

In reviewing the sufficiency of the evidence in a criminal case, the proper standard to be exercised by the Court is whether, after examining the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979); *Sharp v. State*, 707 S.W.2d 611, 614 (Tex.Cr.App.1986).

As applied to this case, the elements of the offense are:[3] (1) that King intentionally or knowingly threatened Officer Black with imminent bodily injury (2) by threatening Black with a deadly weapon (3) when King knew or had been informed that Black was a peace officer, and (4) that Black was then acting in the lawful discharge of his official duty.

It is undisputed that a shotgun is a deadly weapon. It is also undisputed that the officers, acting in the lawful discharge of their official duty, approached King's automobile for the purpose of arresting King.

Since King offered no evidence, our review is limited to the testimony presented by the State's witnesses on direct and cross-examination. Of the thirteen (13) witnesses who testified, the testimony by three (3) witnesses directly concerns the actions of King during the shooting. Henderson Chief of Police Randy Freeman testified that it was his "impression" that King was pointing the shotgun at Officer Black, and that based upon his observation of the manner in which King was handling the shotgun, it did not appear as if King was merely tossing it out of the car. Freeman further testified that the only reason he did not return fire was because by the time he was in position to shoot at King, another officer had crossed into his line of fire.

James Seay, an agent for the Drug Enforcement Administration, testified that King was not making any movement as if he was just tossing the shotgun out of the window. Agent Seay testified that there was "no question in [his] mind" but that King was "either firing or getting ready to fire" the shotgun at Officer Black. When, on cross-examination, he was asked to explain just how King could have been shooting at Officer Black when the discharge was in the opposite direction and had struck King himself in the foot, agent Seay stated, "I believe that Mr. King was trying to get the shotgun around to shoot at Paul Black and it discharged and went into [King's] foot. Just like when I shot at Mr. King, I missed him; but I was shooting at him."

Officer Black testified, "There was no way that [King] was throwing the shotgun out the window. It was [as] if he was going to shoot me."

Prior to this testimony regarding King's actions during the shooting, the jury also

---

2. Approximately ten (10) seconds.

3. Under Tex. Penal Code Ann. §§ 22.01(a)(2) and 22.02(a)(2), (4).

heard testimony from another witness, Theresa Wright. Ms. Wright, a witness for the State, testified that "King was real concerned whether Kenny [Carner] could be trusted or not. And he told Kenny, he said 'If anything goes wrong—' he was talking to Kenny, he said 'If anything goes wrong, I will kill you.' And he turned and pointed to me and he said, 'I'll kill you and I'll kill anybody else involved.'"

The jury is the sole judge of the facts and the credibility of the witnesses. They may choose to believe or not believe any witness or any portion of his testimony. *Sharp*, 707 S.W.2d at 614. The jury is free to resolve inconsistencies within a witness' testimony. *Jackson v. State*, 672 S.W.2d 801, 804 (Tex.Cr.App.1984).

There is no dispute that, at the time of the alleged offense, Officer Black was known by King to be a peace officer, and that Officer Black was acting in the lawful discharge of his official duty in approaching King for the purpose of arresting him. There is no dispute that King held a deadly weapon. The only question presented under King's fourth point of error is whether King intentionally or knowingly threatened Officer Black with imminent bodily injury by threatening him with the deadly weapon.

Eyewitness testimony recounts the events and conduct of all the parties involved at the time of the alleged offense. Direct evidence shows without dispute that King did thrust the shotgun through the car window, barrel first—with the barrel pointing in the direction of Officer Black. The record reveals no testimony indicating that King was, in fact, merely tossing the shotgun out of the window. Although some witnesses testified that while they could not be certain that King was not just tossing the shotgun out, it "appeared" as if King was threatening Officer Black with the shotgun. Other witnesses testified that King was not tossing the shotgun out, but rather, positioning it as if to fire at Officer Black.

The jury also heard testimony stating that King fired the shotgun which then discharged into the floorboard of his own car, thereby injuring his own foot. They also heard testimony that Officer Black identified himself as a police officer and ordered King to "show me your hands." Testimony of eyewitnesses indicated to the jury that even though Officer Black commanded King to "throw the shotgun out the window," King did not merely toss the shotgun out the window, but rather, positioned it as if to fire at Officer Black.

Viewed in its entirety, and after examining the evidence in the light most favorable to the prosecution, we hold that a rational trier of fact could have found each element of the offense beyond a reasonable doubt. Appellant's fourth point of error is overruled.

In his first two points of error, King asserts that the trial court erred at the punishment hearing in admitting into evidence State's Exhibits Nos. 60 and 62, each being a pen packet.

At the punishment phase of trial the State offered into evidence State's Exhibits Nos. 60 and 61, the pen packet records of two prior felony convictions urged as a basis for enhancement of punishment. King objected to the admission of State's Exhibit No. 60 because the pen packet did not contain a copy of the judgment/sentence certified by the district clerk or deputy district clerk of the convicting court. The court overruled the appellant's objection and admitted both exhibits into evidence. King does not complain on appeal of the admission of State's Exhibit No. 61.

State's Exhibit No. 60 contains a copy of the judgment/sentence in Cause No. 28681, styled The State of Texas vs. Gerald Roger King, in Criminal District Court No. 4 of Tarrant County, showing a conviction of the named defendant of burglary.

The State also offered into evidence State's Exhibit No. 62, a pen packet containing copies of the judgments and sentences in five prior convictions, the judgment and sentence in the fifth conviction therein being in Cause No. B–686, styled The State of Texas vs. Gerald Roger King, in the District Court of Collin County, showing a conviction of the named defendant of burglary. The trial court received

State's Exhibit No. 62 into evidence over King's objection that the judgment and sentence in Cause No. B–686 in Collin County were not certified by the district clerk or deputy district clerk of the trial court as correct copies of the originals on file in the clerk's office.

■ It is well settled that the attestation of a district clerk of a county of this state, upon a copy of a judgment or sentence received and filed by that district clerk, is alone sufficient to render such documents admissible into evidence for the truth of the matter stated therein. *Todd v. State,* 598 S.W.2d 286, 292 (Tex.Cr.App.1980). It is only by virtue of the direction that a convict is to be imprisoned, recited by a felony judgment and sentence certified by the district clerk, that the confining agency has the authority to receive and confine him. *Id.; see* Tex.Code Crim.Proc.Ann. art. 43.11 (Vernon 1979).

Tex.R.Crim.Evid. 902 provides in part that:

Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

(1) Domestic public documents under seal. A document bearing a seal purporting to be that of the United States, or of any state, district, Commonwealth, territory, or insular possession thereof, or the Panama Canal Zone, or the Trust Territory of the Pacific Islands, or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution.

(2) Domestic public documents not under seal. A document purporting to bear the signature in his official capacity of an officer or employee of any entity included in paragraph (1) hereof, having no seal, if a public officer having a seal and having official duties in the district or political subdivision of the officer or employee certifies under seal that the signer has the official capacity and that the signature is genuine.

. . . .

(4) Certified copies of public records. A copy of an official record or report or entry therein, of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraphs (1), (2), or (3) of this rule or complying with any statute or court rule prescribed pursuant to statutory authority.

The State contends that State's Exhibits Nos. 60 and 62 are admissible pursuant to Rule 902(4). We do not agree. We construe that the words "the custodian or other person authorized to make the certification" in Rule 902(4) mean the legal custodian of the original of such document. In the instant case, the custodian authorized to make the certification of the judgments and sentences in the exhibits would be the court clerk of the convicting district court. This requirement prescribes a necessary safeguard for the reliability of the matters stated in copies of the original judgments and sentences.

Penitentiary records in the exhibits at issue were duly attested by S.O. Woods, Jr., certified to be the Record Clerk of the Texas Department of Corrections (hereinafter "TDC") by Ralph A. Davis, Jr., County Judge of Walker County, Texas.

Although the record clerk of TDC has attested to the authenticity of the judgments and sentences as being correct copies of documents on file in *his* office, it is the district clerk of the convicting district court and not the record clerk at TDC who is the legal custodian of the *originals* of such documents.

■ We hold that authenticated copies of judgments and sentences of conviction, though made by the Department of Corrections officer having legal custody of such records, are not admissible as self-authenticated records unless they reflect that the copies forwarded to the TDC by the convicting court clerk were "certified copies" of the originals on file in the clerk's office. *See Dingler v. State,* 723 S.W.2d 806, 808 (Tex.App.—Tyler 1987), *pet. dism'd,* 768 S.W.2d 305 (Tex.Cr.App.1989), for the same

holding construing *Todd* and former article 3731a, § 4, Tex.Rev.Civ.Stat.Ann.[4]

 The copies of the judgments and sentences contained in the exhibits at issue do not reflect that the "original" copies forwarded to TDC bore the original attestation of the convicting court clerk or one of his deputies and were, therefore, inadmissible as self-authenticated records under Rule 902(4). *Dingler v. State,* 723 S.W.2d at 808. Furthermore, we find no merit in the State's contention that the copies of the judgments and sentences in the exhibits at issue were admissible under Tex.R.Crim. Evid. 1005. King's first two points of error are sustained.

 In his third point of error, King asserts that the trial court erred at the punishment hearing in admitting into evidence, over appellant's objection, State's Exhibit No. 59, a copy of a document entitled "Judgment and Probation/Commitment Order." King objected that the order was not certified as being a correct copy by the District Clerk of the United States District Court for the Eastern District of Texas.

State's Exhibit No. 59 shows on its face that it does not contain a certificate of the District Clerk of the United States District Court for the Eastern District of Texas, or one of his deputies, certifying that the exhibit is a correct copy of the original on file in the Clerk's office; this discrepancy renders the exhibit inadmissible as a self-authenticated record. Tex.R.Crim.Evid. 902(4). In connection with the exhibit, the State called Hubert Alfaro, a United States Probation Officer for the Eastern District of Texas, as a witness. He testified that State's Exhibit No. 59 contained a "certified copy" of a judgment and probation commitment order out of the United States District Court, Eastern District of Texas, Cause Number TY–86–23–CR, signed by Judge William Steger. Alfaro also testified that he was present in that court on November 3, 1986, when the defendant was sentenced, and that said defendant is the same person as the defendant on trial in the instant case; and that "I believe he was convicted of conspiracy to distribute methamphetamines, speed."

Contrary to Alfaro's testimony, State's Exhibit No. 59 clearly shows that it is not a certified copy. Furthermore, his testimony does not provide independent proof of the specific offense for which the defendant was convicted in the federal case, or of the punishment assessed. *Phillips v. State,* 488 S.W.2d 97, 99–100 (Tex.Cr.App.1972). We hold that State's Exhibit No. 59 was not sufficiently authenticated by Alfaro's testimony for admission into evidence under Tex.R.Crim.Evid. 901(b)(1). King's third point of error is sustained.

The judgment of the trial court is reversed and the cause is remanded for a new trial as to the issue of punishment only. Tex.Code Crim.Proc.Ann. art. 44.-29(b) (Vernon Supp.1989).

RAMEY, C.J., not participating.

---

4. Act of June 21, 1951, ch. 471, 1951 Tex.Gen. Laws 830, 831–832, amended several times, repealed by Tex.R.Crim.Evid. effective September 1, 1986 (now Rule 902, Tex.R.Crim.Evid.).