Nathaniel HENDERSON, Appellant,

v.

The STATE of Texas, Appellee.

No. C14–89–00705–CR.

Court of Appeals of Texas, Houston (14th Dist.).

March 29, 1990.

Rehearing Denied April 26, 1990.

Patricia Saum, Houston, for appellant.
Timothy G. Taft, Houston, for appellee.

Before PAUL PRESSLER, CANNON and ELLIS, JJ.

## OPINION

CANNON, Justice.

Nathaniel Henderson's 40 year sentence for aggravated robbery was enhanced with a previous aggravated robbery conviction. He contends that the trial court erred in overruling his objection that the pen packet used to enhance punishment did not reflect certification of the judgment and sentence by Harris County officials. He also alleges error in the court's rulings on his Batson Motion and his motion to dismiss prosecution. As we are bound by the authority of the Court of Criminal Appeals, we reverse the judgment as to the punishment only, and remand the cause to the trial court for resentencing in accordance with this opinion.

The offense was committed at a Circle T convenience store in Houston. The appellant robbed the store clerk at knife point and absconded with several packages of cigarettes and some cash.

The appellant claims the trial court erred in overruling defense counsel's objection to the admission of the pen packet because the judgment and sentence did not reflect proper certification by the district clerk of Harris County. We recognize an inconsistency in the application of the law on this point. The State argues that the reasoning of the First Court of Appeals in *Rodasti v.*

*State*, 749 S.W.2d 161 (Tex.App.—Houston [1st Dist.] 1988, remanded, 786 S.W.2d 294 (1989)) should apply despite the Court of Criminal Appeals' decision in *Dingler v. State*, 768 S.W.2d 305 (Tex.Crim.App.1989). The State is correct in its assertion that the Court of Criminal Appeals applied TEX.REV. CIV.STAT.ANN. art. 3731a (repealed) instead of the current TEX.R.CRIM.EVID. 901(b)(7) and 902(4).

However, after careful study of the rules, the *Dingler* case, and other very recent appellate case law from the First and Fifth Courts of Appeals, we have determined that the result is the same whether 3731a or 901(b)(7) and 902(4) are applied. The pen packet admitted into evidence by the trial court contained a copy of the judgment and sentence of the appellant's previous conviction for armed robbery which was on file with the Texas Department of Corrections. The records were duly attested by the custodian of records at TDC. Nevertheless, the Court of Criminal Appeals has ruled that to be insufficient assurance of the reliability of the documents. The pen packet should not have been admitted because the copy of the judgment and sentence contained therein did not reflect the certification from the district clerk of the convicting court.

■ The *Dingler* opinion, although based on the old rule, stated that for the pen packet to be admissible as a self-authenticated document, the copy of the judgment and sentence in the pen packet (which is a copy of the certified copy forwarded to the TDC by the clerk of the convicting court) must *reflect* that certification as an original by the clerk of the convicting court. We find that the result is the same under TEX.R.CRIM.EVID. 902(4), which provides:

> Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following: (4) Certified copies of Public Records. A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any

form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraphs (1), (2), or (3) of this rule or complying with any statute or court rule prescribed pursuant to statutory authority.

When the TDC custodian of records copies the sentence and judgment for the pen packet, apparently only the face of the documents are photocopied, which does not reflect certification of the clerk of the convicting court, which often appears on the back. This renders the sentence and judgment in the pen packet "uncertified" unless the trial court is willing to indulge in the presumption that the copy photocopied by the TDC clerk was in fact certified as required by TEX.CODE CRIM.PROC.ANN. art. 43.-11 (Vernon 1981).

We agree with the Dallas Court of Appeals in their recent interpretation of the language in this rule which allows certification by the custodian or other person authorized to make the certification to mean the legal custodian of the *original* document. *Reed v. State*, 785 S.W.2d 412 (Tex.App.—Dallas 1990, pet. pending).

As the Dallas court in *Reed* stated, "... the clerk of the convicting court, not the custodian of records at the TDC, was the legal custodian authorized to certify the judgment and sentence. Requiring that the clerk of the convicting court certify the documents provides a necessary safeguard for the reliability of the matters stated in the copies of the original judgment and sentence." *Reed*, 785 S.W.2d at 414. Like the *Reed* case, the TDC pen packet in this instance did not show the certification of the sentence and judgment by the clerk of the convicting court. Thus, it was not "certified as correct by the custodian" and was not admissible under Rule 902.

■ The state further argues that the pen packet was admissible under Rule 901(b)(7). This rule provides:

(a) General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to sup-

port a finding that the matter in question is what its proponent claims.

(b) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule: ...

(7) Public records and reports. Evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept.

The State has filed a supplement to the transcript before this court which reflects certified copies from the Harris County District Clerk's Office of the sentences and judgments in question. However, those certified copies were not in evidence before the trial court, and were not the exhibits introduced for purposes of enhancement. Therefore, we cannot consider them for purposes of ruling on the admissibility of the evidence presented at the punishment hearing.

We again concur with the *Reed* opinion of the Dallas Court of Appeals on the issue of the applicability of Rule 901(b)(7) to the admissibility of the pen packet. That court reasoned: "The same concerns regarding the reliability of the copy of the judgment and sentence exists as to its admission under rule 901 as under rule 902. While the copy of the judgment and sentence is filed at the TDC, there is no assurance of reliability of the copy absent a certification from the clerk of the convicting court." *Reed,* 785 S.W.2d at 414.

Furthermore, the Court of Criminal Appeals remanded *Rodasti,* the case upon which the State relies, to the First Court of Appeals for reconsideration in light of *Dingler.* In the First Court's substituted opinion following remand, the trial court's judgment regarding punishment was reversed. The First Court held that the "... copies of the judgment and sentence ... had to reflect that the "original" copies received by the TDC were certified by the district clerk." *Rodasti,* 790 S.W.2d 379 (Tex.App.—Houston [1st Dist.] 1990). Therefore, in light of the authority of *Dingler,* the reasoning of the First Court in the substituted *Rodasti* opinion, and that of the Fifth Court in the *Reed* opinion, we sustain the appellant's point of error as to the admissibility of the pen packet, and reverse this cause for another punishment hearing.

Although we find no merit in the appellant's other two points of error, we will briefly address them for purposes of completeness. The appellant complains that the state's peremptory strikes on black venirepersons, numbered 11, 35, and 36, were racially motivated. The appellant contends that the trial court erred in denying his Batson Motion for failure to show a prima facie case of discrimination. In *Batson,* the United States Supreme Court held that the State's purposeful or deliberate denial of jury participation to black persons because of race violated a defendant's rights under the Equal Protection Clause of the United States Constitution and held that the State could not challenge potential jurors solely on account of their race. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 1722, 90 L.Ed.2d 69 (1986).

▪ To invoke the protections of Batson, the appellant must have established purposeful discrimination by showing that 1) he was a member of a cognizable racial group; 2) the prosecutor had exercised peremptory strikes to remove from the venire members of the appellant's race; and 3) the facts and other relevant circumstances raise an inference that the prosecutor used peremptory strikes to exclude the venirepersons on account of their race. *Id.,* 106 S.Ct. at 1723.

▪ If the appellant raises an inference of purposeful discrimination through the State's use of its peremptory strikes, and the trial court determines that a prima facie case of discrimination exists, then the burden shifts to the prosecutor who must come forward with a neutral explanation for the challenges. The trial court must then determine whether despite the state's explanation the appellant established purposeful discrimination by judging the credibility of the prosecutor, the content of the

explanation, and all other surrounding facts and circumstances. The court's finding of fact concerning purposeful discrimination must be given great deference.

The prosecutor gave explanations for each of the three peremptory strikes. The first strike was on a black man hailing from New York whose profession was statistical engineering. The prosecutor offered two reasons for his strike of this venireman. First, the prosecutor felt that generally, people from New York tended to be opinionated. Second, the prosecutor stated that there was an inherent likelihood that this man's training would cause him to expect more precision than the average juror regarding the state's burden. The second strike complained of was on number 35 on the panel, a black woman. The two reasons given by the prosecutor for striking her were her bored demeanor and the fact that the prosecutor was not certain what she did for the Houston Chronicle as an "ad-visor". The third strike under scrutiny was of the venireman number 36, a black male whose juror information card indicated that he was presently separated from his wife. The prosecutor stated that he avoided placing persons with personal problems on the jury because it might interfere with their concentration on the trial.

■ In applying our standard of review to the appellant's complaint regarding the statistical engineer from New York City, we find that the trial court properly judged that there was no prima facie showing of discrimination in the prosecutor's strike of that venireman. We also recognize the authority that an appellant can not do a comparison analysis or raise a claim of pretext for the first time on appeal. *Tompkins v. State*, 774 S.W.2d 195, 202 (Tex.Crim.App.1987).

■ We next must de-emphasize the importance of the second and third strikes, as they were not reached in the jury selection. Twelve jurors were selected from the first 32 venirepersons. Therefore, the state's strikes on numbers 35 and 36 did not disqualify those venirepersons. We additionally note that one black juror was seated on the jury. Although the Court of Criminal Appeals in *Keeton v. State*, 724 S.W.2d 58 (Tex.Crim.App.1987) stated that there was nothing in the language of *Batson* that limits its application to only cases where all jurors of a particular race were excluded, it must be factored in as a part of all other surrounding facts and circumstances considered by the trial judge in making his determination. The appellant's point of error is overruled.

■ In the final point of error, the appellant contends that the trial court erred in failing to dismiss prosecution. The appellant argues that the trial court should have granted his motion to dismiss prosecution after the state successfully sought indictment following the dismissal of the action on the date set for the examining trial. The appellant contends that this action by the court denied him his statutory right to an examining trial. We find no merit in the appellant's argument. An indictment terminates any right to an examining trial. *White v. State*, 576 S.W.2d 843, 844–45 (Tex.Crim.App.1979). Furthermore, persons discharged at an examining trial commonly thereafter are indicted by a grand jury. *Ex Parte LeBlanc*, 577 S.W.2d 731, 733 (Tex.Crim.App.1979). The third point of error is overruled. The judgment is reversed regarding punishment only, and remanded to the trial court for a new punishment hearing consistent with this opinion.