**Melvin Earl HANDSPUR, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–89–00082–CR.**

Court of Appeals of Texas, Dallas.

June 14, 1990.

Discretionary Review Granted Oct. 3, 1990.

Renie McClellan, Cedar Hill, for appellant.

Kathleen A. Walsh, Dallas, for appellee.

Before ENOCH, C.J., and BAKER, J., and ONION[1], J. (Retired, Sitting by Assignment).

## OPINION

BAKER, Justice.

Melvin Earl Handspur, appellant, appeals from a conviction for burglary of a habitation. The trial court assessed punishment, enhanced by two prior convictions, at thirty years' confinement. In his sole point of error, appellant complains of the admission of improperly authenticated pen packets. The recent decision of the Court of Criminal Appeals in *Reed v. State*, No. 222–90 (Tex.Crim.App. May 9, 1990), is dispositive of the issue in this case. We reverse the trial court's judgment and remand this cause to the trial court for further proceedings not inconsistent with this opinion.

## FACTS

Two enhancement paragraphs contained in the indictment set forth appellant's prior convictions for the offenses of theft and unauthorized use of a vehicle. Appellant pled not true to each paragraph. The appellant elected to have the trial court assess punishment, and after finding the enhancement paragraphs to be true, punishment was assessed at thirty years' confinement. During the punishment stage of the trial, the court admitted State's exhibits numbers three and four. Appellant objected to the admission of these exhibits, contending that although the penitentiary packet was properly authenticated by the Texas Department of Corrections (now the Texas Department of Criminal Justice, Institutional Division), it contained copies of judgments and sentences for prior felony convictions which were not properly authenticated by the district clerk of the convicting court.

In his sole point of error, appellant contends that exhibits three and four (the pen packets) should not have been admitted, and that without them, there is insufficient evidence to support the finding of true to the enhancement paragraphs. Appellant argues that the copies of the prior judgments and sentences contained in the exhibits were not properly admitted under rule 902(4) of the Texas Rules of Criminal Evidence. Responding, the State argues that the admissibility of this evidence is governed by both rules 901 and 902 of the Texas Rules of Criminal Evidence and that under these rules, this evidence is admissible. *See* TEX.R.CRIM.EVID. 901(b)(7) and 902(4).

In *Reed v. State*, 785 S.W.2d 412 (Tex. App.—Dallas 1990) (*Reed I*), after considering the recent remand of *Rodasti v. State*, 786 S.W.2d 294 (Tex.Crim.App.1989) (*Rodasti II*), another panel of this Court held that, "in light of *Dingler* [*v. State*, 768 S.W.2d 305 (Tex.Crim.App.1989) ] ... the pen packet was not properly authenticated, and thus was not admissible under Texas Rules of Criminal Evidence 901 or 902." [2]

---

1. The Honorable John F. Onion, Jr., Presiding Judge, Retired, Court of Criminal Appeals, sitting by assignment pursuant to TEX.GOV'T.CODE ANN. § 74.003 (Vernon 1988).

2. The Houston Court originally held that such evidence was admissible under rules 901 and 902 of the Texas Rules of Criminal Evidence. *Rodasti v. State*, 749 S.W.2d 161, 163 (Tex.App. —Houston [1st Dist.] 1988) (*Rodasti I*) (remand-

*Reed,* 785 S.W.2d at 415. *Reed* was recently affirmed and adopted by per curiam opinion of the court of criminal appeals in *Reed v. State,* No. 222-90 (Tex.Crim.App. May 9, 1990) (*Reed II*).[3] We hold that the uncertified copies of the judgment and sentence in this case should not have been admitted.

■ Because there was error in the admission of the evidence, we must reverse the trial court's judgment unless we determine beyond a reasonable doubt that the error made no contribution to the punishment. TEX.R.APP.P. 81(b)(2). Appellant was convicted of burglary of a habitation, a first degree felony. Under section 12.32 of the Texas Penal Code, the range of punishment is life, or for any term of not more than ninety-nine years or less than five years. TEX.PENAL CODE ANN. § 12.32 (Vernon Supp.1990). Appellant's punishment was set at thirty years. While appellant was assessed punishment within the range set for a first degree felony without any enhancement, we cannot determine beyond a reasonable doubt that the admission of the uncertified copies of the sentence and judgment of appellant's prior convictions made no contribution to the punishment. TEX.R.APP.P. 81(b)(2). Appellant's sole point of error is sustained.[4]

We REVERSE the trial court's judgment and REMAND this cause to that court for further proceedings not inconsistent with this opinion. *See Carpenter v. State,* 781 S.W.2d 707, 710 (Tex.App.—Dallas 1989, pet. ref'd); TEX.CODE CRIM.PROC.ANN. art. 44.29(b) (Vernon Supp.1990).

ENOCH, C.J., concurs with an opinion.

ONION, J., dissents with an opinion.

ENOCH, Chief Justice, concurring.

I write separately to make the strong request that the Court of Criminal Appeals reconsider its recent actions. These actions, which ostensibly follow the pre-rules decision in *Dingler,* not only fail to explain why *Dingler* ignores a line of the court's own cases, but make short shrift of rules that ought to be given more than a cursory tip of the hat. Justice Onion's dissent is the better reasoned course. But for being hog-tied by our superior court, the majority, too, believes the new rules allow admission of the court documents in the pen packet.

ONION, Justice (Retired, Sitting by Assignment), dissenting.

I respectfully dissent. Surely, neither this Court nor the Court of Criminal Appeals wants to be in the position of Pogo, the cartoon character, who said: "We have met the enemy and they're us." Yet, that is eventually what we will discover if continued homage is paid to *Dingler v. State,* 768 S.W.2d 305 (Tex.Crim.App.1989) (*Dingler II*), as was done in *Reed v. State,* 785 S.W.2d 412 (Tex.App.—Dallas 1990) (*Reed I*), which in turn was "adopted" by the Court of Criminal Appeals in *Reed v. State,* No. 222–90 (Tex.Crim.App. May 9, 1990) (*Reed II*) (not yet reported).

The *Dingler II* opinion, decided under former article 3731a[1] of the Texas Revised Civil Statutes Annotated, is a flawed opinion. With all due respect, it was and is not

---

ed for reconsideration in light of *Dingler v. State,* 768 S.W.2d 305 (Tex.Crim.App.1989)). This Court, in *Reed I,* interpreted this remand to indicate that such evidence was not admissible under rules 901 and 902 because that was the reasoning and conclusion in *Dingler.*

**3.** After issuance of the opinion in *Reed I,* the Houston Court of Appeals came out with its "reconsidered" opinion in *Rodasti v. State,* 790 S.W.2d 379 (Tex.App.—Houston [1st Dist.] 1990) (*Rodasti III*), also following *Dingler.* In adopting *Reed I,* the Court of Criminal Appeals made no mention of the inconsistency between *Rodasti II,* which allowed the pen packet but ex-

cluded uncertified evidence and *Reed I,* which excluded the entire pen packet.

**4.** The majority conclusion is so only because we, as an intermediate court, are bound to follow the dictate of the Court of Criminal Appeals as it applies to the facts of this case.

**1.** Act of September 8, 1951, ch. 471, § 1, 1951 TEX.GEN LAWS 830, 831–32, amended several times and last amended before repeal by Act of September 1, 1975, ch. 280, § 1, 1975 TEX.GEN LAWS 666, 667, repealed by Act of August 26, 1985, ch. 685, § 9(b), 1985 TEX.GEN LAWS 2472, 2474 and the Texas Rules of Criminal Evidence, effective September 1, 1986.

"sound," and the opinion should not be the linchpin for future cases decided under rules 901 and 902 of the Texas Rules of Criminal Evidence. Despite the manufacturer's label on the opinion, one day, with continued use, the wheel will come off, and this will be particularly true when rules 901 and 902 are interpreted in contexts other than with respect to self-authentication of pen packets. When decided, *Dingler II* was inconsistent with earlier cases decided under former article 3731a as well as flawed in its reasoning and is also inconsistent with federal cases decided under the federal rules of evidence, the source of rules 901 and 902 of the Texas Rules of Criminal Evidence.

In his sole point of error appellant urges that the "trial court erred in finding the allegations of the enhancement paragraphs of the indictment to be true as the evidence was insufficient to sustain the findings." Appellant argues that the authenticated pen packets offered by the State contained judgments and sentences which were not also certified by the district clerk of Dallas County, where the prior convictions were obtained. Thus, appellant contends there was insufficient probative evidence to support the trial court's findings at the penalty stage of the trial.

At appellant's trial, which commenced on November 7, 1988, the State, in proving the enhancement allegations, offered duly authenticated pen packets[2] which included judgments, sentences, fingerprints, photographs, etc., along with the testimony of a fingerprint expert that the known fingerprints of appellant were identical with those in the pen packet. No other evidence was offered.

Appellant's objection, when the pen packets were offered, was "The contents ... not the penitentiary contents, but the judg-

ment and sentence or whatever ... the court documents that are in there are not certified copies of any court documents and I object on those grounds." The objection was overruled. Appellant did not challenge the validity of the prior convictions nor claim a lack of connection with the same. He contends only that since the judgments and sentences in the packets were not certified by the district clerk there was a lack of self-authentication, at least as to the judgments and sentences, and they were not admissible into evidence in absence of a proper predicate.

The very question presented has sharply divided the courts of appeals over the proper application of the Texas Rules of Criminal Evidence, although the domino theory seems to be in current vogue since *Rodasti v. State*, 749 S.W.2d 161 (Tex.App.—Houston [1st Dist.] 1988) (*Rodasti I*) (decided under rules 901 and 902 of the Texas Rules of Criminal Evidence) was remanded by the Court of Criminal Appeals, *Rodasti v. State*, 786 S.W.2d 294 (Tex.Crim.App.1989) (*Rodasti II*), for further consideration in light of *Dingler v. State*, 768 S.W.2d 305 (Tex.Crim.App.1989) (*Dingler II*) (decided under former article 3731a of the Texas Revised Civil Statutes). While the instant case is controlled by the Texas Rules of Criminal Evidence, it is helpful to briefly examine former practice and cases decided under former article 3731a of the Texas Revised Civil Statutes.

The use of certified copies of a judgment and a sentence *and* authenticated copies of prison records including judgment, sentence, photographs, and fingerprints, supported by expert testimony identifying the fingerprints as identical with known prints of the defendant, has been the most common method of proving prior convictions.

---

2. I do not understand appellant to question the manner of the authentication of the pen packets themselves. In each, S.O. Woods certified that he was the Record Clerk of the Texas Department of Corrections and that in his legal custody as such officer are the original files and records of persons committed, including the photographs, fingerprints and commitments, including the judgments and sentences of Melvin Earl Handspur giving the trial court's cause numbers and inmate number. This is authenticated by Hon. Frank J. Robinson, County Judge of Walker County, where the Department of Corrections is located, and in turn authenticated by James D. Patton, Clerk of the County Court of Walker County and given under the seal of the said court. All three signatures are attached to the attestation and certificates in the proper place.

*Littles v. State,* 726 S.W.2d 26, 32 (Tex. Crim.App.1987) (op. on reh'g); *Beck v. State,* 719 S.W.2d 205, 209 (Tex.Crim.App. 1986). It is, however, only one method or way of proving prior convictions. *Beck,* 719 S.W.2d at 209; *Brumfield v. State,* 445 S.W.2d 732, 740 (Tex.Crim.App.1969); *Alridge v. State,* 732 S.W.2d 395, 396 (Tex. App.—Dallas 1987, pet. ref'd). Certainly the various methods normally enumerated cannot be said to be exclusive means of proving prior convictions. *Littles,* 726 S.W.2d at 32. Further, the proof offered may include the use of a combination of methods. *Beck,* 719 S.W.2d at 209–10. Copies of judgments and sentences have often been used as an integral part of one method or offered in conjunction with another or introduced as additional insurance of proof. When offered as an independent exhibit, *Blakes v. State,* 634 S.W.2d 319, 320 (Tex.Crim.App. [Panel Op.] 1982), it must be certified by a district clerk or a deputy if it is to be self-authenticated. *Todd v. State,* 598 S.W.2d 286, 292 (Tex. Crim.App. [Panel Op.] 1980); *Speights v. State,* 499 S.W.2d 119, 122 (Tex.Crim.App. 1973).

When certified copies of a judgment and sentence *and* the authenticated records of the Texas Department of Corrections or other penal institutions have been used to prove prior convictions, these documents have been held admissible under whatever version of former article 3731a was in effect at the time of the defendant's trial. *Beck,* 719 S.W.2d at 210; *Phillips v. State,* 538 S.W.2d 116, 118 (Tex.Crim.App.1976). When such method of proof has been utilized along with fingerprint testimony, *see, e.g., Beck,* 719 S.W.2d at 209; *Vessels v. State,* 432 S.W.2d 108, 117 (Tex.Crim.App. 1968) (op. on reh'g); *Roberts v. State,* 164 Tex.Crim. 537, 301 S.W.2d 154, 155 (1957), it has not been said that the independent exhibit of the certified copies of the judgment and sentence was an essential part of that method of proof. Other cases have referred to authenticated pen packets containing certified copies of judgments and sentences along with expert fingerprint testimony as being sufficient to meet the requirements of article 3731a and the man-

ner of proof approved in earlier cases. *See, e.g., Rinehart v. State,* 463 S.W.2d 216, 219 (Tex.Crim.App.1971); *Allen v. State,* 451 S.W.2d 484, 485 (Tex.Crim.App. 1970). Still other cases have merely referred to an authenticated pen packet and fingerprint testimony as being sufficient without express reference to the judgments and sentences. *See, e.g., Jones v. State,* 470 S.W.2d 874, 876 (Tex.Crim.App.1971); *Graham v. State,* 422 S.W.2d 922, 926 (Tex.Crim.App.1968); *Jackson v. State,* 402 S.W.2d 742, 743 (Tex.Crim.App.1966). Nothing in any of these cases indicated that only copies of a judgment and sentence certified by the district clerk was necessary to demonstrate self-authentication.

In *Jones v. State,* 449 S.W.2d 277, 278 (Tex.Crim.App.1970), the authenticated pen packet contained a certified copy of the sentence but not the judgment. The sentence reflected it had been pronounced "in accordance with the verdict and judgment herein rendered and entered." In absence of a showing to the contrary, it was presumed that the sentence was based on a judgment, and the lack of proof claim was overruled. *See also Thornton v. State,* 576 S.W.2d 407, 408–09 (Tex.Crim.App. 1979); *Chesteen v. State,* 712 S.W.2d 553, 554–55 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd) (fact that Oregon penitentiary packet containing page entitled "sentence" did not contain copy of judgment did not render packet insufficient for enhancement purposes).

In *Kanaziz v. State,* 382 S.W.2d 485, 486 (Tex.Crim.App.1964), the defendant contended that it was error for the trial court to have admitted a copy of a Michigan sentence, commitment and prison records including fingerprints. Each document was certified by the supervisor of prison records and authenticated by the judge and clerk of the Circuit Court of Jackson County, Michigan, in the same manner as in the instant case. Our Court of Criminal Appeals wrote: "This we deem to be in strict compliance with the terms of article 3731a V.A.R.C.S. *We find no merit in appellant's contention that the sentence and*

*commitment should have been attested by the clerk of the convicting court."* Kanaziz, 382 S.W.2d at 486 (emphasis added); *see also Ashley v. State,* 527 S.W.2d 302, 304–05 (Tex.Crim.App.1975); *Rodriguez v. State,* 706 S.W.2d 789, 790–91 (Tex.App.— San Antonio 1986), *pet. dism'd,* 745 S.W.2d 353 (Tex.Crim.App.1988); *Cobb v. State,* 655 S.W.2d 276, 278 (Tex.App.—Corpus Christi 1983, no pet.).

*Evans v. State,* 677 S.W.2d 814 (Tex.App. —Fort Worth 1984, no pet.) held that since the entire pen packet was properly attested as to its authenticity, the proof of the authenticity of each document contained therein including the mandate of the Court of Criminal Appeals was not necessary for compliance with article 3731a. *Evans,* 677 S.W.2d at 820. Further, the contention that authenticated records of the Texas Department of Corrections were copies of copies and not of the originals has been rejected. *Dagley v. State,* 394 S.W.2d 179, 183 (Tex.Crim.App.1965), *cert. denied,* 384 U.S. 945, 86 S.Ct. 1470, 16 L.Ed.2d 542 (1966); *Warden v. State,* 366 S.W.2d 786, 788–89 (Tex.Crim.App.), *cert. denied,* 375 U.S. 886, 84 S.Ct. 162, 11 L.Ed.2d 116 (1963).

In *Love v. State,* 730 S.W.2d 385, 397 (Tex.App.—Fort Worth 1987, no pet.), the New Mexico "pen packet" was held to be properly authenticated under section 4 of article 3731a. The defendant claimed that fingerprints and a photograph contained therein had in fact been taken by the New Mexico State Police and that certification by that organization, not the Central Record Unit of the New Mexico penitentiary, was needed. Rejecting such contention, the court stated: "We find no requirement in article 3731a, section 4 that the custodian [of the records] explain the methods of obtaining the records." *Love,* 730 S.W.2d at 397.

It is common knowledge that inmates are not accepted at the Texas Department of Corrections without certified copies of the judgment and sentence showing a felony conviction, which papers then become the official records of the Department of Corrections. *Blakes,* 634 S.W.2d at 320; *Ri-*

*condo v. State,* 634 S.W.2d 837, 844 (Tex. Crim.App.1982) (op. on reh'g); *see also* TEX. CODE CRIM.PROC.ANN. arts. 42.09 and 43.11 (Vernon 1979 and Supp.1990).

Thus, the fact that the judgment and sentence in the pen packet were not separately certified by the district clerk of the convicting court has been held not to preclude the admission of pen packets certified by the record clerk of the Texas Department of Corrections and authenticated by the judge and clerk of Walker County. *Johnson v. State,* 720 S.W.2d 877 (Tex. App.—Texarkana 1986, no pet.); *Garza v. State,* 705 S.W.2d 818, 820 (Tex.App.—San Antonio 1986, no pet.).

Before terminating any discussion of cases decided under former article 3731a, note must be taken of the decision in *Dingler v. State,* 723 S.W.2d 806 (Tex.App.— Tyler 1987) (*Dingler I*), *pet. dism'd,* 768 S.W.2d 305 (Tex.Crim.App.1989) (*Dingler II*). This case is the source of much of the present confusion in attempting to apply the Texas Rules of Criminal Evidence. Three prior convictions were alleged for enhancement of punishment in *Dingler.* The trial court utilized only one in assessing punishment. On appeal, the court of appeals remanded for a new hearing on punishment, finding that while the pen packet was duly authenticated, the judgment and sentence therein were not shown to have been certified by the district clerk, the custodian of the agency having legal custody of the records under section 4 of article 3731a. *Dingler I,* 723 S.W.2d at 808. The court relied upon language in *Todd,* 598 S.W.2d at 292–93, although the judgment and sentence in *Todd* was certified by the district clerk and the issue was the sufficiency of the evidence to sustain the enhanced punishment. *Todd,* 598 S.W.2d at 291–93. *Todd* did not specifically hold that proof of certification by the district clerk was essential or necessary to authenticate a pen packet.

The Court of Criminal Appeals granted the State's petition for discretionary review to expressly determine whether the Tyler Court of Appeals in its holding had misconstrued *Todd.* *Dingler II,* 768 S.W.2d at

305. That court eventually decided the petition was improvidently granted and dismissed it. In doing so the court, in an unusual move, wrote an opinion on the issue. Regrettably, the court did not construe *Todd*. The Court did observe what the court of appeals had failed to observe, namely, that while the judgments in the pen packets were not certified by the district clerk, the sentences contained therein were certified. This would have authorized the admission of the pen packet in the one prior conviction used by the trial court under the decisions in *Thornton v. State*, 576 S.W.2d 407, 409 (Tex.Crim.App.1979), and *Jones v. State*, 449 S.W.2d 277, 278–79 (Tex.Crim.App.1970), earlier noted. However, without citation of authority, the *Dingler II* opinion added "cases applying article 3731a required that the judgment and sentence *both* be properly certified." *Dingler II*, 768 S.W.2d at 306 (emphasis in original). Neither *Kanaziz* or any of the earlier cases discussed were mentioned except *Blakes*, 634 S.W.2d at 319. In footnote two, the *Dingler II* opinion sought to distinguish *Blakes*, relied upon by the dissent, on the basis that there was other evidence in *Blakes* to reach the same result without reliance upon "the recognized presumption that the Texas Department of Corrections does not admit inmates without certified copies of a judgment and sentence." *Dingler II*, 768 S.W.2d at 306.

In the time slot between *Dingler I* and *Dingler II*, the decision in *Rodasti v. State*, 749 S.W.2d 161 (Tex.App.—Houston [1st Dist.] 1988) (*Rodasti I*) was reached. The defendant there relied upon article 3731a and *Dingler I*. Justice Duggan, in a well reasoned opinion for the court, pointed out that article 3731a had been repealed and noted that *Dingler I*, which was based on such statute, was in direct conflict with earlier cases, and its reliance upon *Todd* was flawed. The court held that under the now applicable rules 901 and 902 of the Texas Rules of Criminal Evidence the pen packet in question was self-authenticated, and thus admissible into evidence at the penalty stage of the trial, even though the copies of the judgment and sentence of the prior conviction contained in the authenti-

cated pen packet did not bear the separate certification from the district clerk of the convicting court. *Rodasti*, 749 S.W.2d at 163; *see also* TEX.R.CRIM.EVID. 901(b)(7) and 902(1), (4).

The decision in *Rodasti I* was followed in *Davis v. State*, 772 S.W.2d 563, 570 (Tex. App.—Waco 1989, no pet.); *Redd v. State*, 768 S.W.2d 439, 440 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd); and *Wyble v. State*, 764 S.W.2d 927, 930–31 (Tex.App.—Amarillo 1989, pet. ref'd). *See Barber v. State*, 757 S.W.2d 83, 87 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd) (noting that pen packet bearing the seal of the county court, an attestation by the TDC records clerk that the documents contained therein were certified copies of the originals, and the signatures of the record clerk, the county clerk, and the presiding judge of the county court were sufficient authentication under rules 901(b)(7) or 902(1)).

Strangely, although the issue was the same, the Court of Criminal Appeals refused the petitions for discretionary review in *Wyble* and *Redd* but later, acting upon an earlier filed petition, remanded *Rodasti I* to the court of appeals for further consideration in light of *Dingler II*. *Rodasti v. State*, 786 S.W.2d 294 (Tex.Crim.App.1989) (*Rodasti II*).

The reason for the remand is somewhat obscure. True, the cases are in conflict, but *Dingler II* was decided under the former statute and was inconsistent with much of the earlier case law, and *Rodasti I* was decided under the Texas Rules of Criminal Evidence adopted by the Court of Criminal Appeals, the principal source of which was the Federal Rules of Evidence. Some may envision the remand as the raising of the *Dingler II* flag to see how many salutes it rates, before the Court of Criminal Appeals writes definitively on rules 901 and 902 of the Texas Rules of Criminal Evidence. Others have apparently heard the rumble of tanks in the streets and on the horizon and have engaged in arm-jerk "Heil *Dingler*" salutes.

Relying upon *Dingler II*, the Tyler Court of Appeals interpreted the language of rule 902(4) allowing certification by "the custo-

dian or other person authorized to make the certification" to mean only "the legal custodian of the original of the documents." Thus, with this restrictive interpretation, the court held that the judgment/sentence in a duly authenticated pen packet was inadmissible since it was not shown to be additionally certified by the district clerk. *King v. State,* 790 S.W.2d 678 (Tex.App.—Tyler, 1989, pet. pending on other grounds). This holding carried to its logical conclusion would mean that the only contents of a duly authenticated pen packet that would be admissible, as being self-authenticated, would be contents original to the penal institution itself. Each other document therein would have to carry the additional certificate of the clerk, judge, probation officer, or another as the case may be. This would apply to all of the documents required to be furnished by the Department of Corrections before a defendant is admitted as required by article 42.-09 of the Texas Code of Criminal Procedure, as well as a mandate from an appellate court. TEX.CODE CRIM.PROC.ANN. art. 42.09 (Vernon Supp.1990).

A panel of this Court followed *King's* rewording of rule 902(4) and concluded there is no assurance of reliability of the copy of the judgment/sentence absent a certification by the clerk of the convicting court. The panel brushed aside rule 901 (providing that authentication is satisfied by evidence supporting a finding that the matter is what its proponent claims) on the same concerns regarding reliability. The panel, noting the remand of *Rodasti I,* wrote: "We hold, in light of *Dingler [II],* that because the copy of the judgment and sentence provided by the TDC had not been certified by the clerk of the convicting court, the pen packet was not properly authenticated, and thus was not admissible under Texas Rules of Criminal Evidence 901 or 902." *Reed v. State,* 785 S.W.2d 412, 415 (Tex.App.—Dallas 1990, pet. granted) (*Reed I*).

Following the remand of *Rodasti I* by *Rodasti II* the court of appeals threw in the towel. *Rodasti v. State,* 790 S.W.2d 379 (Tex.App.—Houston [1st Dist.], 1990) (*Rodasti III*). Bowing to *Dingler II,* the court withdrew *Rodasti I,* and remanded the cause for a new punishment hearing.

In *Henderson v. State,* 788 S.W.2d 621 (Tex.App.—Houston [14th Dist.], 1990) (pet. pending), the Court acknowledged it was "bound by the authority of the Court of Criminal Appeals" in *Dingler II* and was influenced by *Reed I* and the withdrawal of *Rodasti I.* The court concluded the same result is reached under article 3731a as interpreted in *Dingler II* or under Rules 901 or 902, and sustained the point of error as to "the admissibility of the pen packet" because the judgment and sentence were not also certified by the district clerk.[3]

With opinions of the Court of Appeals on both sides of the question, along came *Reed II.* Having granted the petition in *Reed I,* the Court of Criminal Appeals handed down a brief one page opinion in which it simply stated: "We have reviewed the Court of Appeals' opinion and find its reasoning sound. *Dingler v. State,* 768 S.W.2d 305 (Tex.Crim.App.1989). We therefore adopt that opinion as our own without further comment." *Reed v. State,* No. 222–90 (Tex.Crim.App., May 9, 1990) (not yet reported) (*Reed II*).

This, then, is the opinion that the majority finds dispositive of the instant case, but the quickie adoption of *Reed I* seems to have been without a home visit by a caseworker. More than the review of one opinion adhering to the flawed *Dingler II* opinion is needed. The Texas Rules of Criminal Evidence, promulgated by the Court of Criminal Appeals holds more promise than this. The applicable rules, statutes, and federal decisions should be looked to as guidance.

---

**3.** It is observed that while *Henderson, Reed I* and *Reed II* hold the pen packet inadmissible, King appeared to hold only the judgment and sentence therein inadmissible as does the majority opinion in the instant case though it purports

to follow *Reed II.* Footnote 3 of the majority opinion does observe the inconsistency and notes the Court of Criminal Appeals has yet to resolve the same.

Texas Rule of Criminal Evidence 901 provides in part:

(a) **General Provision.** The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

(b) **Illustrations.** *By way of illustration only, and not by way of limitation,* the following are examples of authentication or identification conforming with the requirements of this rule:

\*   \*   \*   \*   \*   \*

(7) *Public records and reports.* Evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept.

Tex.R.Crim.Evid. 901 (emphasis added).

Article 43.11 of the Texas Code of Criminal Procedure (authority for imprisonment) provides for a certified copy of a judgment and sentence as sufficient authority to imprison a defendant. Tex.Code Crim.Proc. Ann. art. 43.11 (Vernon 1979). The current version of article 42.09 section 2 of the Texas Code of Criminal Procedure provides that a defendant shall be admitted to the Department of Corrections on the basis of a commitment. Tex.Code Crim.Proc.Ann. art. 42.09, § 2 (Vernon Supp.1990). Section 8(a)(1) and (2) of article 42.09 provides that the county transferring a defendant to the Department of Corrections shall deliver to the director a copy of the judgment, and, if applicable, a copy of any order revoking probation and imposing sentence. Section 8(a) and (c) provides for certain other papers, reports and statements to be delivered to the director and section 8(b) provides that the defendant shall not be taken in custody at the Department of Corrections until the aforesaid documents are received by the director. The documents then become the official records of the Department of Corrections and the record clerk their custodian.

Article 42.09 has always provided for admission to the Department of Corrections on the basis of a commitment as did its forerunner, article 775 of the 1925 Code of Criminal Procedure. *Todd* pointed out that the attestation to the "commitments" was a generic one and included judgments and sentences in the pen packet. *Todd,* 598 S.W.2d at 292. We know that copies of judgments, sentences and commitments are "authorized by law to be recorded or filed" at the Department of Corrections and are "in fact recorded or filed" in that public office. *See Todd,* 598 S.W.2d at 292; *Grogan v. State,* 713 S.W.2d 705, 711 (Tex.App. —Dallas 1986, no pet.). Therefore, evidence that those documents or copies thereof are "from the public office where items of this nature are kept" constitutes sufficient compliance with rule 901(b)(7).

Evidence that the judgments and sentences were from the Department of Corrections files could come in the form of oral testimony from the record clerk himself. *See Handy v. State,* 160 Tex.Crim. 258, 268 S.W.2d 182, 195–86 (Tex.Crim.App.1954). This, of course, is not practical in a state the size of Texas. Without the shepherding angel of an authenticating witness, documents will be accepted into evidence by a simpler and more practical method: self-authentication. Rule 902 of the Texas Rules of Criminal Evidence, dealing with self-authentication, provides in part:

Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

(1) **Domestic Public Documents under seal.** A document bearing a seal purporting to be that of ... any state ... or of a ... department, officer or agency thereof, and a signature purporting to be an attestation or execution....

\*   \*   \*   \*   \*   \*

(4) **Certified copies of public records.** A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed in a public office, ... certified as correct by the custodian or other person authorized to make the certification by certificate complying with paragraphs (1), (2) or (3)

of this rule or complying with any statute or court rule prescribed pursuant to statutory authority.

TEX.R.CRIM.EVID. 902.

Neither rules 901(b)(7), 902(1) or 902(4) require evidence that the documents "recorded or filed" in a public office be certified prior to the recording or filing. Article 42.09 pertaining to the documents that must be received by the director before admission to the Department of Corrections, is silent as to any prior certification of those documents. *Cf.* TEX.CODE CRIM. PROC.ANN. art. 43.11 (Vernon 1979). It is, however, common knowledge that a convicted defendant is not admitted without the Department of Corrections receiving a copy of judgment/sentence duly certified by the district clerk of the county where the felony conviction was obtained and that such copy then becomes part of the inmate's official record at the Department of Corrections. *Blakes,* 634 S.W.2d at 320; *Ricondo,* 634 S.W.2d at 844.

While Texas courts are not bound by lower federal court decisions, it has been observed that since the federal rules and the Texas civil and criminal rules of evidence are identical or strikingly similar, there should be harmony in the opinions, if possible, with deference given to the construction of the federal rules by federal courts. *Rodda v. State,* 745 S.W.2d 415, 418 (Tex.App.—Houston [14th Dist.] 1988, pet. ref'd). Under any circumstances the federal decisions and the commentaries thereof should furnish Texas courts some guidance.

Since there is little danger of fraud with respect to the first nine classes [under Rule 902] of documents and tangible things, the change should not threaten the truth-finding function of the Courts. That evidence is authenticated does not mean that it must be accepted as valid by a factfinder. *Authentication signifies that the proponent of the evidence has done enough to identify or to explain the evidence for the trier to be justified in finding that the evidence is what the proponent claims. An opposing party can offer conflicting evidence and the factfinder may accept it as true. Thus, self-authentication lift some of the usual burden from the proponent of evidence without inhibiting an opponent from offering conflicting evidence.*

2 S. SAITZBURG & M. MARTIN, FEDERAL RULES OF EVIDENCE MANUAL, 506–07 (5th ed. 1990) (emphasis added). K. BRAUN, G. DIX, E. GELLHORN, D. KAYE, R. MEISENHOLDER, E. ROBERTS & J. STRONG, MCCORMICK ON EVIDENCE, § 228 at 700–711 (3rd ed. 1984) finds this to be a "common sense approach ... long overdue and [which] might well be extended...."

In *United States v. Darveaux,* 830 F.2d 124 (8th Cir.1987), a prosecution under the Armed Career Criminal Act of 1984, which requires the government to prove that the defendant had a prior felony conviction, the court held that a copy of the defendant's Texas criminal conviction record certified as correct by the department of corrections clerk was a self-authenticating record admissible under Rule 902 since it was an "official record" and, under Texas law, the clerk was the legal custodian of such records.[4] *Darveaux,* 830 F.2d at 126; *see and cf. United States v. Vidaure,* 861 F.2d 1337, 1340–41 (5th Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 1551, 103 L.Ed.2d 854 (1989) (holding that certified and exemplified copies of defendant's convictions and copies of documents contained in his "pen packet" obtained from TDC were properly admitted in evidence under hearsay exception for public records).

In *United States v. Dancy,* 861 F.2d 77 (5th Cir.1988), a prosecution for possession of a firearm by a felon, a copy of the pen packet kept on the defendant by a state (California) department of corrections (including a criminal judgment) that a corrections official certified to be a copy of the original packet in her legal custody was held properly authenticated under Rule 902(4). *Dancy,* 861 F.2d at 79. The court rejected the defendant's argument that there was no evidence that the pen packet

---

**4.** The holding in *Darveaux* did not turn on the fact there was an independent exhibit of certified copies of the judgment and sentence in the record.

was actually recorded or filed "in a public office" as meritless since the rule does not contemplate that "official records" must be filed or recorded in a public office to be self-authenticating.

In *United States v. Beason,* 690 F.2d 439 (5th Cir.1982), *cert. denied,* 459 U.S. 1177, 103 S.Ct. 828, 74 L.Ed.2d 1023 (1983), the Fifth Circuit Court of Appeals held that certification by the "officer having legal custody of the record" satisfies the requirements of Federal Rules of Evidence 902, and that extrinsic evidence of custody and of delegation is not necessary where there is a signed certificate by the public officer having actual legal custody of the documents. *Beason,* 690 F.2d at 444. "We find no requirement in the rule that such actual custodian of the records also secure further certification(s) of the delegation of custodial authority down from the head of the department or agency entrusted by law with the custody of the documents." *Beason,* 690 F.2d at 444. *Accord, Evans v. State,* 677 S.W.2d 814, 820 (Tex.App.—Fort Worth 1984, no pet.); *cf. Reed I and II.*

With this background, note should be taken of Texas Rule of Criminal Evidence 102 (Purpose and Construction) which is the same as the Federal Rule.[5] "Rule 102 ... is ostensibly a 'rule of liberal' construction applicable to all the Rules of Evidence." 33 GOODE, WELLBORN AND SHARLOT, GUIDE TO THE TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL, § 102.1 (Texas Practice 1981).

This Rule [102] implicitly assumes that there may be problems of interpretation but reminds both counsel and judges of the purpose behind the Rules. Whether stated or not, many of the other Rules represent a balancing of interests, e.g.,

the need for evidence balanced against time or expense.

WENDORF AND SCHLEUTER, TEXAS RULES OF EVIDENCE MANUAL, pp. 4–5 (2nd ed. 1988). The rules are not to be applied with wooden formalism at the cost of a just result. A reasonable degree of flexibility in interpretation seems essential. *See United States v. Jimenez Lopez,* 873 F.2d 769, 772–73 (5th Cir.1989) (a question of authentication); *United States v. Bibbs,* 564 F.2d 1165, 1169 (5th Cir.1977), *cert. denied,* 435 U.S. 1007, 98 S.Ct. 1877, 56 L.Ed.2d 388 (1978). The rules favor the admission of evidence.

While the use of copies of judgments and sentences certified by the district clerk, either as an independent exhibit or within the pen packet, is certainly recommended,[6] I would conclude that the duly authenticated pen packet in the instant case was properly admitted under rules 901(b)(7) and 902(1), (4) and that the evidence was sufficient to support the enhancement allegations of the indictment. I respectfully dissent, with the fervent hope that the Court of Criminal Appeals will take an in depth look at the question of self-authentication under it own Rules of Criminal Evidence.

5. Rule 102 provides:
These rules shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined.
6. *See Davis v. State,* 772 S.W.2d at 570. Part of the problem behind the rash of cases raising the

issue involved herein may lie at the feet of the Department of Corrections. Apparently, when the pen packets are prepared at the Department of Corrections, only the face of the documents are photocopied, not reflecting the certification by the district clerk which often appears on the flip side of the judgment and sentence. *See Henderson v. State,* 788 S.W.2d 621 (Tex.App.—Houston [14th Dist.] 1990, n.p.h.).